UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 4 2017

Gebrial Rasmy,

Plaintiff,

—v—

Marriott International, Inc., d/b/a JW Marriott
Essex House Hotel,

Defendant.

16-cv-04865 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, United States District Judge:

 Plaintiff Gebrial Rasmy, proceeding *pro se*, brings this action against his former

employer Marriott International, Inc. d/b/a JW Marriott Essex House Hotel ("Marriott").[1]

Affording the complaint the requisite liberal construction, Rasmy alleges that Marriott subjected

him to a hostile work environment on the basis of his religion and national origin and retaliated

against him for complaining of such treatment, including by ultimately terminating his

employment.  Rasmy asserts claims under Title VII of the Civil Rights of 1964, 42 U.S.C.

§§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290,

*et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-

101, *et seq.* ("NYCHRL").  Marriott moves to dismiss Rasmy's complaint in its entirety pursuant

to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Rasmy's state and

---

[1] Defendant asserts in its moving papers that Plaintiff's allegations as to its corporate name are incorrect and that it should have been named as "Marriott Hotel Services, Inc."  In any event, for purposes of this Order, the Court will refer to the Defendant as "Marriott."

city-law hostile environment claims must be DISMISSED on jurisdictional grounds not raised by the parties, and Marriott's motion is otherwise DENIED.

## I.    Background

### A.    Allegations[2]

Rasmy is of Egyptian descent and a practicing Christian.  Complaint, Dkt. No. 2 ("Comp."), ¶ 14.  In 1993, Marriott first hired Rasmy as a part-time banquet server. *Id.* ¶ 12.  In light of his "excellent performance" in that capacity, Marriott promoted him to full-time banquet server in 1998. *Id.*  ¶ 13.  For approximately twenty years, Rasmy worked for Marriott without issue. *Id.* ¶ 15.

In 2012, Rasmy reported wage theft by several of his fellow employees to human resources director Karen Doherty. *Id.* ¶ 16.  When Doherty failed to respond to this report, Rasmy elevated the matter to Marriott's corporate office, prompting Doherty, sometime later, to accuse Rasmy of creating "extra work for her" and to warn that "next time she would fire him." *Id.* ¶¶ 17-18 (internal quotation marks omitted).

Following these initial reports to human resources and corporate management, Rasmy's co-worker and union delegate, Estratue Stamatis, began directing various ethnic and religious slurs against him, calling him, among other things, "camel," "mummy," "fucking Egyptian," and "fucking Christian." *Id.* ¶ 19 (internal quotation marks omitted).  In addition, Stamatis called Rasmy a "rat," and "coerced" Rasmy's fellow employees to sign a petition in support of Rasmy's termination. *Id.*  Rasmy reported these developments to Doherty and to unspecified "[m]anagement" personnel but "nothing was done to stop the harassment," which continued. *Id.*

---

[2] Unless otherwise noted, the following is taken from Rasmy's complaint and assumed, for purposes of this motion, to be true. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (on motion to dismiss, court takes complaint's "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor").

¶ 20.  At some point, additional co-workers, Sesskon Pongpanta and Tehrani Mehrani, joined in Stamatis's verbal abuse of Rasmy.  *Id.* ¶ 21.

Rasmy filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") in approximately May 2013, which was dual-filed with the New York State Division of Human Rights (the "NYSDHR").  *Id.* III.A., ¶ 22.  In both 2014 and 2015, Rasmy submitted additional complaints to unspecified individuals or departments within Marriott, complaining of Stamatis's, Pongpanta's, and Mehrani's conduct.  *Id.* ¶¶ 23-24.  In approximately December 2014 and May 2015, Rasmy filed additional discrimination charges with the EEOC.  *Id.* III.A, ¶ 25.  The May 2015 charge, at least, was dual-filed with the NYSDHR.  *Id.* ¶ 25.

Shortly after the filing of Rasmy's May 2015 charge, Stamatis "on multiple occasions" called Rasmy a "fucking Christian," a "pretentious Christian," and a "mummy."  *Id.* ¶ 26 (internal quotation marks omitted).  In addition, Stamatis at times also referred to people of Christian faith generally as "good Christians" and/or "alcoholic Christians."  *Id.* ¶ 27 (internal quotation marks omitted).

Rasmy reported Stamatis's conduct to the director of his department in approximately early June 2015.  *Id.* ¶ 28.  The director, who is not identified by name, told Rasmy in response that there was "nothing [he] could do" to remediate the situation, and he declined to "file a report" on Rasmy's behalf.  *Id.* ¶ 28 (brackets in original) (internal quotation marks omitted).  Thereafter, Stamatis, at least, persisted in his course of conduct.  *Id.* ¶ 29.

In late June 2015, Rasmy sent an e-mail to Marriott's corporate office, complaining of "Stamatis['s] religious and national origin harassment," and the failures of both Doherty and

3

"management" to intervene despite their awareness of the situation. *Id.* ¶ 30. That same month,

Rasmy filed yet another charge with the EEOC, dual-filed with the NYSDHR. *Id.* ¶ 31.

During the subsequent months, Stamatis, Pongpanta, and Mehrani continued to verbally

"harass[]" Rasmy, prompting Rasmy to submit additional complaints to Marriott, none of which

received a response. *Id.* ¶ 32-33. "Shortly after" one such complaint, Pongpanta "spit in

[Rasmy's] face." *Id.* ¶ 34. Rasmy reported this development to "management," which

questioned Pongpanta "for the first time." *Id.* ¶¶ 35-36. In response to management's questions,

it is alleged, Pongpanta falsely claimed that Rasmy had in fact "spit at him." *Id.* ¶ 36. Based on

Pongpanta's accusation, Marriott suspended Rasmy for "exhibit[ing] hostility toward[] his co-

worker." *Id.* ¶ 37. On May 24, 2016, Marriott terminated Rasmy's employment. *Id.* ¶ 38. In

June 2016, Rasmy filed an additional charge with the EEOC. *Id.* III.A.

Rasmy initiated the instant action on June 22, 2016. *See generally id.*

**B.      Administrative Documentation**

Rasmy's pleading, which includes both a copy this District's form employment

discrimination complaint completed by hand and a separate computer-processed long-form

complaint, makes various references to administrative discrimination charges. In several

instances, these references are somewhat vague, and at times they appear inconsistent with one

another. As best as the Court can discern, it appears that the complaint explicitly alleges that

Rasmy filed a total of five discrete charges with the EEOC and/or the NYSDHR: in May 2013,

December 2014, May 2015, June 2015, and June 2016. *See id.* III.A., ¶¶ 22, 25, 31. The

complaint does not attach copies of any of these charges but does attach a single right-to-sue

letter issued by the EEOC on March 22, 2016. *Id.* p. 5. The complaint both generally alleges

that Rasmy has "exhausted all administrative remedies as required as a prerequisite to the filing

4

of his instant Title VII and NYHRL claims," *id.* ¶ 6, and specifically refers – it appears – to the

March 22, 2016 right-to-sue letter, *id.* ¶ III.B.

In support of its motion to dismiss, Defendant submits, among other things, a declaration

of counsel, which attaches copies of certain discrimination charge notices received by Marriott as

well as copies of certain underlying charges. These reflect the following filings by Rasmy: a

charge of discrimination filed with the EEOC on May 21, 2015, dual-filed with the NYSDHR,

alleging violations of Title VII; a charge of discrimination filed with the EEOC on June 23,

2015, dual-filed with the NYSDHR, making allegations of discrimination and retaliation but

failing to cite a specific statute; a charge filed with the EEOC in or around June 2016 alleging

violations of Title VII; and a complaint filed directly with the NYSDHR on June 14, 2016, dual-

filed with the EEOC, alleging violations of both Title VII and the NYSHRL. *See* Declaration of

Mark A. Saloman, Esq., Dkt. No. 19 ("Saloman Dec."), Exs. 1-4.

As attachments to supplemental papers in opposition to Marriott's motion to dismiss,

Rasmy submits a right-to-sue letter issued by the EEOC on November 18, 2014, two separate

right-to-sue letters – corresponding to distinct charges – issued by the EEOC on March 22, 2016

(one of which is a duplicate of the letter attached to Rasmy's complaint), and a right-to-sue letter

issued by the EEOC on September 19, 2016 (months after the initiation of this action). *See*

Plaintiff's Supplemental Opposition to Defendant's Motion to Dismiss, Dkt. No 32 ("Supp.

Opp."), at 5-9.

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff

is required to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (additional internal quotation marks omitted).

In deciding a motion to dismiss, a court must "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Steginsky v. Xcelera Inc.* 741 F.3d 365, 368 (2d Cir. 2014).  Documents filed *pro se* are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*.") (internal quotation marks omitted) (emphasis in original).[3]

At the pleading stage, a court generally "must limit its analysis to the four corners of the complaint." *Vassilatos v. Ceram Tech. Int'l, Ltd.*, 92-cv-4574, 1993 WL 177780, at *5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991)).  It may, however, "consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs'

---

[3] Rasmy retained counsel in anticipation of mediation after Marriott's motion to dismiss was fully submitted.  The parties made all filings that are pertinent to this motion while Rasmy was still proceeding *pro se.*

possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal alterations omitted) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).   With respect to the last category of materials, the Court of Appeals has emphasized that the "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration" thereof – "mere notice or possession is not enough." *Chambers*, 282 F.2d at 153 (emphasis in original).  "[C]ourts in this Circuit have routinely taken judicial notice of EEOC determinations" when deciding 12(b)(6) motions targeting employment discrimination complaints. *Frederick v. JetBlue Airways Corp.*, 14-cv-7238, 2016 WL 1306535, at *5 (E.D.N.Y. Mar. 31, 2016) (collecting cases); *see also Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (court may look to "public records . . . in deciding a motion to dismiss"). Accordingly, the Court may rely on the various EEOC filings and disposition letters submitted by the parties in resolving Marriott's motion, notwithstanding any lack of explicit reference or incorporation on the face of the complaint.

## III.     Discussion

### A.     The NYSHRL and NYCHRL Hostile Environment Claims Are Barred by Applicable Election of Remedies Provisions

Before turning to the arguments raised by Marriott in support of its motion, it is necessary to dispose of Rasmy's hostile environment claims under the NYSHRL and NYCHRL on jurisdictional grounds that the parties appear to have overlooked.

The NYSHRL and the NYCHRL both contain "election of remedies" provisions.  These provide "that a person who files a complaint with either the [NYSDHR] or the New York City Commission on Human Rights . . . thereby waives his or her right to sue in court." *See, e.g.,*

*Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011).   The pertinent

provision of the NYSHRL reads in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory
> practice shall have a cause of action in any court of appropriate
> jurisdiction . . . unless such person had filed a complaint hereunder
> or with any local commission on human rights . . . .

N.Y. Exec. Law § 297(9).  The pertinent NYCHRL provision similarly reads:

> Except as otherwise provided by law, any person claiming to be a
> person aggrieved by an unlawful discriminatory practice . . . or an
> act of discriminatory harassment or violence . . . shall have a cause
> of action in any court of competent jurisdiction . . . unless such
> person has filed a complaint with the City Commission on Human
> Rights or with the State Division of Human Rights with respect to
> such alleged unlawful discriminatory practice or act of
> discriminatory harassment or violence . . . .

N.Y.C. Admin. Code § 8-502(a).   "Thus, both the NYSHRL and the NYCHRL require dismissal

of a suit in court if the complainant lodges a complaint with either the [NYSDHR] or the

Commission. This bar applies in federal as well as state court." *Higgins*, 836 F. Supp. 2d at 187

(emphasis omitted).  The two election of remedies provisions are "nearly identical . . . and

discussion of the latter applies equally to the former." *York v. Ass'n of Bar of City of N.Y.*, 286

F.3d 122, 127 (2d Cir. 2002) (internal quotation marks omitted).  There are two exceptions to the

litigation bar established by these provisions: "(1) a complaint filed with the Commission or

[NYSDHR] dismissed for administrative convenience . . . and (2) a complaint filed with the

Commission or [NYSDHR] by the EEOC pursuant to the Title VII requirement that all

complaints filed directly with the EEOC be referred to the local agency (for duty-sharing

purposes)." *Alston v. Microsoft Corp.*, 08-cv-3547, 2009 WL 1116360, at *4 (S.D.N.Y. Apr. 27,

2009) (internal citations omitted).

Importantly, the election of remedies bar operates to divest a federal court of subject matter jurisdiction over the relevant state law claims. *See Moodie v. Fed. Reserve Bank*, 58 F.3d 879, 881-84 (2d Cir. 1995) ("Both the language of the statute and its consistent judicial interpretation establish that § 297(9) poses an insuperable jurisdictional bar to the advancement of [plaintiff's] state law claims in this litigation."); *see also Waller v. Munchnick, Golieb & Golieb, P.C.*, 523 Fed. App'x 55, 56 n.1 (2d Cir. 2013) (Summary Order) (district court "properly concluded that it lacked jurisdiction over plaintiff's claims arising out of New York state and city law" because plaintiff previously filed unsuccessful claim with NYSDHR); *Carroll v. United Parcel Serv.*, 225 F.3d 645, 2000 WL 1185583, at *3 (2d Cir. 2000) (Summary Order) ("The jurisdictional bar posed by § 297(9) required the district court to dismiss [plaintiff's] claims for lack of jurisdiction . . . ."); *Higgins*, 836 F. Supp. 2d at 187 ("[t]he election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Federal Rule of Civil Procedure 12(b)(1) rather than 12(b)(6)"); *cf. McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010) ("[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim") (internal quotation marks omitted).  Federal courts "have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  Accordingly, although neither the parties' briefing nor the complaint refers to the election of remedies provisions, the Court is required to address the issue.  The Court concludes that these provisions compel dismissal of Rasmy's NYSHRL and NYCHRL hostile environment claims.

The majority of the discrimination charges included in the record appear to have been submitted to the EEOC in the first instance before being "dual-filed" with the NYSDHR, thus exempting them from the election of remedies bar under the second exception set forth above (covering complaints filed with the EEOC directly and then referred to a local agency for duty-sharing purposes).  It appears from the somewhat limited documentation submitted to the Court, however, that Rasmy elected to file at least one pertinent complaint directly with the NYSDHR in the first instance, leaving it subject to preclusion under the elections of remedies provisions. Specifically, on June 14, 2016 – approximately one week prior to the initiation of this action – Rasmy filed a verified complaint with the NYSDHR (case no. 10182175) (the "June 14 Complaint") explicitly asserting a discrimination claim under the NYSHRL.  *See Saloman Dec. Ex. 2*.[4]  The supporting allegations, while few in number and lacking in detail, clearly correspond to those marshalled in support of the hostile environment claims asserted before this Court. Rasmy asserts, for example, that he was subjected to "insults" and "slurs" by "the delegate and others," that he was "attacked" by a co-worker, and that "the H.R. Director" refused to take action despite repeated complaints by Rasmy – and instead falsely accused Rasmy of "criminal charges" and continued to "facilitate and accommodate his harassers."  *Id.*  The June 14 Complaint further alleges, more generally, that Rasmy received the "worst treatment [as] compared to other[s]" at the hands of the "H.R. Director."  *Id.*

---

[4] To the extent that this particular filing is not explicitly referenced or otherwise incorporated into Rasmy's complaint – which, as discussed, is somewhat imprecise in its allegations identifying Rasmy's various filings – the Court may nevertheless take judicial notice of it for the purpose of deciding this motion. *See, e.g., Macer v. Bertucci's Corp.*, 13-cv-2994, 2013 WL 6235607, at *1 n.1 (E.D.N.Y. Dec. 3, 2013) ("in deciding motions to dismiss in discrimination actions, courts regularly take notice of [NYSDHR] filings and determinations relating to a plaintiff's claims" ) (collecting cases).  In any event, in addressing whether a claim must be dismissed for lack of subject matter jurisdiction, a court may generally refer to evidence outside of the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

While the June 14 Complaint appears to specifically allege violations of only the NYSHRL and does not expressly invoke the parallel NYCHRL, the election of remedies provisions in those statutes cover "'unlawful discriminatory *practice[s]*,' not 'claims,' brought to the attention of the relevant administrative bodies." *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 298 (S.D.N.Y. 2016) (emphasis added) (citing N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(a)). Relatedly, "the election of remedies bar . . . precludes consideration of any claim – whether brought under the NYSHRL or the NYCHRL – arising out of the same *incident* on which [plaintiff's] [NYSDHR] complaint was based." *Higgins*, 836 F. Supp. 2d at 188 (emphasis added).

Here, it is clear here both that Rasmy's hostile environment claims under the NYCHRL and NYSHRL "arise from" the "same discriminatory practices" as those alleged in the June 14 Complaint, *see McNulty v. N.Y.C. Dep't of Fin.*, 45 F. Supp. 2d 296, 303-304 (S.D.N.Y. 1999), and that they are premised on substantially the "same" series of "incident[s]" that gave rise to the June 14 Complaint, *see Dixon v. Krasdale Foods, Inc.*, 13-cv-3045, 2013 WL 6334439, at *2 (S.D.N.Y. Dec. 4, 2013); *see also Alston*, 2009 WL 1116360, at *4 ("When a plaintiff files a complaint with the Commission or Division, no City or State HRL claims arising from the same facts can be adjudicated in federal court . . . ."). Accordingly, those claims are subject to the bar established by the election of remedies provisions of the NYSHRL and NYCHRL, and the Court may not exercise subject matter jurisdiction over them. As such, Rasmy's complaint does not state a plausible claim to relief on these counts, and they must be, and hereby are, DISMISSED.[5]

---

[5] Nothing in the record before the Court suggests that the June 14 Complaint falls within the first exception to the election of remedies bar – *i.e.*, that it was "dismissed for administrative convenience" prior to the filing of this action. *Alston*, 2009 WL 1116360, at *4. Certainly, given the brief interval between the two filings, the Court is highly skeptical that such a resolution was reached. In any event, Rasmy, "[a]s the party 'seeking to invoke the subject matter jurisdiction of the district court' . . . bears the burden of demonstrating that there is subject matter

*See, e.g.*, *Dixon*, 2013 WL 6334439, at *2 (when plaintiff filed NYSDHR complaints, dual-filed with the EEOC, he "elected his remedies and waived his right to bring a subsequent lawsuit on his state-and city-law claims"); *Williams v. City of N.Y.*, 916 F. Supp. 2d 517, 521-22 (S.D.N.Y. 2013) (state-law discrimination claims dismissed because allegations in federal complaint and allegations in NYSDHR complaint were "based on the same operative facts and arise from the same events").

Rasmy's state and city-law retaliation claims, on the other hand, are not explicitly asserted in the June 14 Complaint and are fundamentally premised on at least one crucially distinct fact – the termination of his employment – that is not alleged expressly or by implication in the June 14 Complaint. Those claims, then, are not barred by the election of remedies provisions and the Court may exercise jurisdiction over them. Accordingly, they may proceed. *See, e.g.*, *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 225 n.3 (S.D.N.Y. 2010) (notwithstanding prior NYSDHR complaint, the court may exercise jurisdiction over plaintiff's NYSHRL and NYCHRL claims "to the extent that they are based on conduct not alleged in [the NYSDRH complaint] – i.e., retaliation claims based upon events occurring later in time").

### B.   Plaintiff's Title VII Claims Are Not Subject to Dismissal for Failure to Exhaust Administrative Remedies

Having disposed of the state and city-law hostile environment claims, the Court proceeds to consider whether Marriott's arguments, both of which are procedural in nature, support dismissal of the remaining claims. Marriot first contends that the Title VII claims must be

---

jurisdiction in the case." *Id.* (quoting *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40 (2d Cir. 1996)) (also citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). Rasmy does not allege or otherwise draw the Court's attention to anything that would support the Court exercising subject matter jurisdiction over his state and city-law hostile environment claims under the circumstances presented.

dismissed because Rasmy failed to properly exhaust his administrative remedies prior to filing this action. The Court concludes otherwise.

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y. City Housing Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e–5). "In addition, the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." *Id.* "Administrative exhaustion is not a jurisdictional requirement." *Erasmus v. Deutsche Bank Americas Holding Corp.*, 15-cv-1398, 2015 WL 7736554, at *13 (S.D.N.Y. Nov. 30, 2015) (citing *Francis v. City of N.Y.*, 235 F.3d 763, 768 (2d Cir. 2000)). But it "is an essential element of the Title VII . . . statutory scheme[], and, as such, a precondition to bringing such [a] claim[] in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted).

It is well-settled, however, that unexhausted claims may be brought in federal court "if they are 'reasonably related' to the claim filed with the agency." *Williams*, 458 F.3d at 70 (citing *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). The Court of Appeals has recognized at least three sets of circumstances in which plaintiffs may successfully invoke this exception: "(1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (internal quotation marks omitted).

13

The "reasonably related" doctrine is "essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks and brackets omitted). "To determine whether a claim is 'reasonably related' to a claim included in an EEOC charge, courts should focus 'on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving,' and ask the 'central question' of 'whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases.'" *Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 610 (S.D.N.Y. 2016) (quoting *Williams*, 458 F.3d at 70).

Marriott's exhaustion argument has narrowed somewhat over the course of the parties' briefing on the instant motion. Originally, Marriott contended that, notwithstanding Rasmy's allegation that he had exhausted "all administrative remedies" and his submission of a March 22, 2016 EEOC right-to-sue letter, the Title VII claims should be dismissed because Rasmy had apparently filed multiple discrimination charges and the "EEOC ha[d] not issued right to sue letters in connection with four" of those charges. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, Dkt. No. 18 ("Opp."), at 5; *see also* Comp. III.B., 5, ¶ 6. After Rasmy submitted several additional right-to-sue letters along with his opposition papers, Marriott modified its position to focus exclusively on Rasmy's June 14 Complaint. Specifically, Marriott now acknowledges that Rasmy obtained right-to-sue letters regarding several of his discrimination charges but maintains that because no such letter issued with respect to the June 14 Complaint prior to the initiation of this action, Rasmy failed to fully exhaust his administrative remedies and his Title VII claims must therefore be dismissed. *See*

14

Marriott's Reply Letter-Memorandum in Further Support of Its Motion to Dismiss, Dkt. No. 33 ("Reply"), at 1-2. The Court is not persuaded.

At least with regard to the Title VII hostile environment claim, the June 14 Complaint – while apparently unresolved at the time Rasmy initiated this lawsuit – is essentially an abbreviated version of the same discrimination charge that Rasmy filed, and the EEOC addressed, several times over. For example, the administrative records reflect that Rasmy filed discrimination charges with the EEOC on May 21, 2015 (charge no. 520-2015-01763) and June 23, 2015 (charge no. 520-2015-02793) alleging hostile environment harassment based on substantially the same pattern of verbal abuse by Stamatis, general unresponsiveness and false accusations by Doherty, and lack of intervention by management on which both the June 14 Complaint and the hostile environment claims asserted in this action are premised. *See* Saloman Dec. Exs. 3-4. Indeed, those charges describe in some detail many of the very same incidents (individual slurs, specific threats, particular reports or meetings) that are recounted in the complaint before this Court, and both expressly assert harassment of an ongoing nature. *Id.* The EEOC issued right-to-sue letters with respect to each of those charges on March 22, 2016, and Rasmy initiated this action within the allotted ninety days thereafter. *See* Supp. Opp. at 6-7. The Court has little difficulty concluding that the Title VII hostile environment claim asserted here is therefore either identical to that disposed of by the EEOC as of March 2016 or, at the very least, reasonably related thereto under both the first and third prongs of that doctrine as set forth above (i.e., it would fall within the reasonably expected scope of the EEOC investigation and/or it alleges discrimination carried out in precisely the same manner as that described in the EEOC complaints). *See, e.g., Almendral v. N.Y. State Office of Mental Health*, 743 F.2d 963, 967-68 (2d Cir. 1984) (finding reasonable relation because "defendants' alleged subsequent acts are

essentially the same as the earlier allegedly wrongful conduct contained in the EEOC complaint" and the administrative complaint "plainly stated that the acts of discrimination were on a 'continuing' basis").

Marriott cites no authority for the proposition that the continuing pendency of one administrative complaint in a series of related – if not substantially identical – complaints constitutes failure to exhaust when earlier complaints in the series have been resolved.   To the contrary, several courts in this District faced with analogous circumstances have declined to dismiss Title VII claims on failure-to-exhaust grounds.  *See, e.g.*, *Babcock v. Frank*, 729 F. Supp. 279, 284-85 (S.D.N.Y. 1990) (denying motion to dismiss even though only two of plaintiff's four related EEOC charges had been resolved at the time of suit); *see also Commer v. City of N.Y.*, 93-cv-7408, 1996 WL 374149, at *3 (S.D.N.Y. Jul. 3, 1996) (refusing to preclude litigation of claims asserted in charge disposed of by EEOC purely because "there is currently an administrative complaint pending that contains similar allegations").  The Court is satisfied that such a resolution here is consistent with the purpose of the exhaustion requirement, which is "'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'"  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)).  The EEOC, given ample notice of Marriott's purported course of harassing conduct by virtue of Rasmy's multiple earlier charges, cannot be said to have been deprived of that opportunity.  *Cf. Babcock*, 729 F. Supp. at 284-85 (noting that "[t]his is not an instance in which allegations were never presented to the EEOC in order to sidestep administrative investigation" and observing that the Court of Appeals has "warn[ed] against the restrictive and inflexible application of the exhaustion of administrative remedies doctrine") (citing *Weise v. Syracuse Univ.*, 522 F.2d 397, 412 (2d Cir. 1975)).

Accordingly, the Court concludes that Rasmy's Title VII hostile environment claim was properly exhausted, and, to the extent it was not, it falls squarely within the reasonable relation exception to the exhaustion rule.

Rasmy's retaliation claims, insofar as they are not fully set forth in the 2015 administrative charges discussed above (both of which predate Rasmy's alleged termination), are also reasonably related to the allegations set forth in those charges. As a result, they too survive Marriott's exhaustion challenge.

As discussed, unexhausted claims may be asserted in federal court if either they "would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination," or they "allege[] retaliation for filing the EEOC charge." *Alfano*, 294 F.3d at 381 (internal quotation marks and citations omitted). Rasmy's retaliation claims do both.

First, each of Rasmy's EEOC charges resolved in March 2016 reflects a check in the box next to the "Retaliation" category of alleged discriminatory conduct, and each amply alleges Rasmy's engagement in protected activities (the filing of internal and administrative discrimination complaints) that could support a cognizable retaliation claim. Saloman Dec. Exs. 3-4. At least one such charge asserts that human resources personnel, agitated by Rasmy's discrimination complaints, confronted Rasmy with "false[] accus[ations]" on a number of occasions. Saloman Dec. Ex. 3. The same charge goes on to expressly raise the possibility of future retaliatory termination, averring both that Rasmy had been "repeatedly threatened with termination in retaliation for . . . complaints of discrimination" and continued to "be[] threatened with termination in retaliation for . . . participation in protected activities." *Id.* Accordingly, those charges afforded both the EEOC and Marriott itself substantial notice that retaliatory termination claims could later be raised, and the resulting EEOC investigation could reasonably

have been expected to include an inquiry into the threat of such termination. *See, e.g., Rinsler v. Sony Pictures Entm't, Inc.*, 02-cv-4096, 2003 WL 22015434, at *9 (S.D.N.Y. Aug. 25, 2003) (retaliation claim based on termination occurring after EEOC charge filed reasonably related to EEOC charge when plaintiff alleged in later suit that termination was "inextricably linked to the discrimination about which she . . . already complained"); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) ("We frequently invoke the 'reasonably related' doctrine when the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action *or to have placed the employer on notice that such claims might be raised*.") (emphasis added).

The complaint before the Court, moreover, explicitly alleges that Marriott in fact later terminated Rasmy's employment "at least in part" because of his harassment complaints, "including but not limited to his complaints to the EEOC." Comp. ¶¶ 49, 60. Such assertions, particularly when combined with the more particularized allegations concerning Rasmy's confrontations with human resources and corporate management over his repeated complaints, constitute an independent basis to permit the retaliation claims to proceed, notwithstanding their arguable absence from the resolved EEOC charges. *See, e.g., Donohue v. Finkelstein Memorial Library*, 987 F. Supp. 2d 415, 426-27 (S.D.N.Y. 2013) (denying summary judgment on failure-to-exhaust grounds because "retaliatory conduct alleged in these claims occurred after, and allegedly in response to, the filing of the EEOC complaint").

For all of these reasons, Marriott's motion to dismiss on failure-to-exhaust grounds is DENIED.

**C.      The Arbitration Clause of the Collective Bargaining Agreement Does Not Constitute Grounds for Dismissal at This Time**

Marriott next argues that Rasmy's complaint should be dismissed because his claims are precluded by the collective bargaining agreement (the "CBA") between Rasmy's union (the New York Hotel and Motel Trades Council, AFL-CIO) and Marriott's trade association (the Hotel Association of New York City, Inc.).  Opp. at 6-7.  Specifically, Marriott maintains that the CBA mandates that "any" complaints or disputes as between union members and employers – including discrimination and wrongful termination claims – be submitted in the first instance to standardized grievance and arbitration procedures.  Opp. at 6-7.  Marriott suggests that the law of this Circuit generally requires employees alleging wrongful termination to "'at least attempt to exhaust exclusive grievance and arbitration procedures established by [an applicable] bargaining agreement' before pursuing independent litigation."  *Id.* at 6 (quoting *Bey v. Welsbach Elec. Corp.*, 38 Fed. App'x 690, 692-93 (2d Cir. 2002) (Summary Order)).  Because, Marriott continues, Rasmy purportedly "initiated the CBA's exclusive grievance procedure concerning the termination of his employment" but then abandoned any pursuit of remedies potentially available thereunder (including by cancelling several scheduled "Step One" meetings), this lawsuit "represents an impermissible attempt to sidestep the CBA[]" and must be dismissed.  Opp. at 7.  The Court disagrees.

**1.      Marriott's Argument Is Impermissibly Reliant on Extrinsic Evidence**

First, there is the matter of Marriott's reliance on an extrinsic document – that is, the CBA.  The CBA – or, more accurately, select portions of it – is purportedly before the Court purely on the strength of Marriott's submission of the document as an exhibit to its moving papers.  *See* Saloman Dec. Ex. 5.  Rasmy's complaint makes no reference to the CBA, and does

19

not attach it as an exhibit or otherwise incorporate it.  And notwithstanding Rasmy's general

allegations of union membership and purported harassment by a union delegate, the Court sees no

basis to conclude that Rasmy "reli[ed]" on the "terms and effect" of the CBA "in drafting the

complaint," which asserts statutory discrimination claims, not contract claims. *Chambers*, 282

F.2d at 153 (emphasizing that such "reliance" is a "necessary prerequisite" to a court's

consideration of an extrinsic document).  Marriott's passing – and unsubstantiated – suggestion

that its moving papers attach only documents "referenced and/or incorporated by reasonable

reference in the Complaint" is therefore simply incorrect.  Opp. at 2 n.2.  As a result, it would be

"inappropriate" for the Court to consider the CBA in deciding Marriot's Rule 12(b)(6) motion.

*See, e.g.*, *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202-03 (2d Cir.

2013) (district court erred in dismissing common law claims based on preclusive terms of

collective bargaining agreements that were not referenced in the complaints but were submitted

with defendants' motion papers); *see also id.* at 203 (specifically rejecting argument that

"[p]laintiffs were responsible for pleading the CBAs in the complaints").

      Although Marriott does not raise the possibility, it is true that under Federal Rule of Civil

Procedure 12(d), the Court potentially could convert Marriott's motion to dismiss into a motion

for summary judgment and consider the CBA in resolving the converted motion.  *See* Fed. R. Civ.

P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 56.").  But the "ultimate decision of whether to convert a Rule 12(b)(6)

motion into a Rule 56 motion is discretionary," and the Court will decline to order conversion

under the circumstances. *See Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 358

(S.D.N.Y. 2016).  Parties are "entitled to a reasonable opportunity to present material pertinent to

a summary judgment motion," and the "essential inquiry" in deciding whether to convert a motion to dismiss is "whether the [parties] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or [were] taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (internal quotation marks omitted).  Given his *pro se* status and the lack of any explicit conversion request in Marriott's moving papers, Rasmy cannot fairly be charged with recognition of the possibility of conversion.  The better route, the Court concludes, is exclusion of the CBA from consideration at this stage.  And the CBA being the sole basis for Marriott's second argument in favor of dismissal, that argument necessarily fails.

### 2.    In Any Event, the CBA Provisions Submitted by Marriott Do Not Preclude Rasmy's Lawsuit

Even if the Court were to consider those portions of the CBA submitted by Marriott, its preclusion argument would fail on the merits.  As a general matter, "[a] union-negotiated CBA cannot waive rights to bring a federal statutory claim in a judicial forum unless that waiver is clear and unmistakable." *Fernandez*, 159 F. Supp. 3d at 359 (citing *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79-80 (1998)); *see also Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 82 (2d Cir. 2016) ("Collectively bargained agreements to arbitrate statutory discrimination claims must be 'clear and unmistakable.'").  That standard is "exacting." *Lawrence*, 841 F.3d at 84.  Arbitration clauses that are "very general," mandating, for example, arbitration of all "matters under dispute" are insufficient, because such language "could be understood to mean matters in dispute under the contract" – and not necessarily statutory claims. *Wright*, 525 U.S. at 80-82.  The Supreme Court has repeatedly made clear that "explicit incorporation of *statutory* antidiscrimination requirements" is critical if an employee's assent to

an arbitration clause is to be deemed clear and unmistakable waiver of the right to litigate statutory discrimination claims. *Id.* at 80 (emphasis added); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 256-63 (2009) (finding right to pursue age discrimination claims in court waived when arbitration clause explicitly named applicable statutes, and distinguishing cases in which the applicable contract "did not expressly reference the statutory claims at issue"). Courts in this Circuit have taken the guidance, regularly distinguishing between agreements that "specifically reference[]" the relevant statutes, and those that do not. *See, e.g., Fernandez*, 159 F. Supp. 3d at 359-60 (collecting cases); *Viruet v. Port Jervis City Sch. Dist.*, 11-cv-1211, 2013 WL 4083229, at *6 (S.D.N.Y. Aug. 13, 2013) (same).

During the pendency of Marriott's motion to dismiss, the Court of Appeals had occasion to apply these principles in the Title VII and NYSHRL context. *See Lawrence* 841 F. 3d at 83-86. In *Lawrence*, the relevant collective bargaining agreement contained a "No Discrimination" clause and separately set forth mandatory grievance and arbitration procedures. The former provided in pertinent part:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability of an individual in accordance with applicable law, national origin, sex, sexual orientation, union membership, or any characteristic protected by law. Any disputes under this provision shall be subject to the grievance and arbitration procedure (Article V).

*Id.* at 83 (quoting agreement). The section establishing the grievance and arbitration procedures in turn provided in relevant part that "'[a] grievance shall first be taken up directly between the Employer and the Union'; that '[a]ny dispute or grievance between the Employer and the Union which cannot be settled directly by them shall be submitted to the Office of the Contract Arbitrator . . . '; and that '[t]he procedure herein with respect to matters over which a Contract

22

Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues . . . .'" *Id.* (alterations in original) (quoting agreement).

The Court deemed those provisions insufficient to effectuate a clear and unmistakable waiver of the employee plaintiff's right to pursue statutory discrimination claims in federal court. It reasoned that even though the agreement clearly "prohibit[ed] discrimination on the basis of any characteristic protected by law and compel[ed] arbitration of any disputes under that provision," it "ma[de] no mention of 'claims' or 'causes of action,'" "cite[d] no statutes," and did "not suggest that statutory discrimination claims based on those characteristics are subject to arbitration." *Id.* at 85 (internal quotation marks and brackets omitted) (also observing that the agreement compelled arbitration of "disputes under 'this provision,'" without making unmistakably clear that such disputes included statutory claims) (quoting agreement); *cf. Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 39-41, 49-53, 59-60 (1974) (no waiver of Title VII discrimination lawsuit despite presence of contractual antidiscrimination provisions and a grievance clause requiring arbitration of all disputes based on "differences . . . between the Company and the Union as to the meaning and application of the provisions of this Agreement" and/or "any trouble aris[ing] in the plant") (internal quotation marks omitted).

Here, the portions of the CBA to which Marriott directs the Court do not come close to constituting "clear and unmistakable" waiver of Rasmy's rights to pursue Title VII and state and city-law discrimination claims in federal court. Marriott submits, and relies on in its briefing, a section of the CBA addressing "Complaints, Grievances, and Arbitrations." Saloman Dec. Ex. 5. That section provides in pertinent part that "[a]ll complaints, disputes, or grievances" between a union member and an employer "involving questions or interpretation or application of any clause in this Agreement, or any acts, conduct or relations between the parties, directly or

indirectly" shall, in the first instance, be submitted to a labor manager and a representative of the union for joint consideration and adjustment and then, in the event of disagreement at that stage, to a permanent impartial umpire for a final decision. *Id.* ¶ 26(a); *see also* Opp. 6-7 (arguing that such language mandates resolution of Rasmy's statutory claims via the grievance procedures). While no doubt broad, the language of this provision – like that issue in *Lawrence* – fails to cite any statutes, to explicitly reference "claims" or "causes of action," or to otherwise specifically suggest that it covers statutory discrimination claims. *See Lawrence*, 841 F.3d at 84-85. Accordingly, the provisions highlighted by Marriott do not preclude Rasmy's lawsuit.[6]

The cases relied on by Marriot are not to the contrary. Each of those addresses the general requirement that an employee asserting a claim under Section 301 of the Labor Management Relations Act ("LMRA") for breach of a collective bargaining agreement must usually "at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *See Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *Bey*, 38 Fed. App'x at 692-93. As Rasmy's claims are brought under Title VII and state and city law rather than the LMRA, such authorities are inapposite.

Finally, to the extent that Marriott contends that, even in the absence of any prospective contractual waiver, Rasmy's purported actual initiation (and subsequent abandonment) of the CBA's grievance procedures constitutes an independent bar to litigation, that argument, too, is unavailing. The Supreme Court recognized more than forty years ago that when an applicable agreement does not require arbitration of statutory discrimination claims, the "actual submission

---

[6] According to its table of contents, the CBA contains a "No Discrimination" provision, which Marriott has declined to submit to the Court at this time. The Court recognizes the possibility that that provision contains language that could potentially effectuate waiver of Rasmy's rights to bring this lawsuit.

of petitioner's grievance to arbitration" does not in and of itself preclude later litigation.

*Alexander*, 415 U.S. at 49-52; *see also Pyett*, 556 U.S. at 261-62.

## IV.   Conclusion

For the foregoing reasons, Rasmy's NYSHRL and NYCHRL hostile environment claims

are DISMISSED for lack of subject matter jurisdiction, and Marriot's motion to dismiss is

otherwise DENIED.

A copy of this Order will be mailed to Mr. Rasmy.

SO ORDERED:

Dated:   February **23**, 2017
         New York, New York

_____
ALISON J. NATHAN
United States District Judge