UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 8 2018

Gebrial Rasmy,

        Plaintiff,

—v—

Marriott International, Inc., d/b/a JW Marriott
Essex House Hotel, *et al.*,

        Defendants.

16-CV-4865 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, United States District Judge:

    Plaintiff Gebrial Rasmy brings this action against his former employer Marriott

International, Inc. d/b/a JW Marriott Essex House Hotel ("Marriott"), and his former co-workers,

Karen Doherty ("Doherty"), Stamatis Efstratiou ("Efstratiou") Mehran Tehrani ("Tehrani"), and

Sekson Pongpanta ("Pongpanta") (collectively, "Individual Defendants," or, with Marriott,

"Defendants").[1] Rasmy asserts various claims under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights

Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law,

N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL") centered on alleged racial, religious, and

national origin discrimination.

---

[1] Three of the four Individual Defendants are improperly pled, per Defendants' moving papers, as "Estratue Stamatis," "Tehrani Mehrani," and "Sesskon Pongpanta." Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Mot."), Dkt. No. 88, at 1, n.1.

1

Defendants move for summary judgment and, for the following reasons, the Court GRANTS Defendants' motion as to all federal claims, and DECLINES to exercise supplemental jurisdiction over the remaining NYSHRL and NYCHRL claims.

## I. Procedural Background

On June 22, 2016, Plaintiff Gebrial Rasmy, proceeding *pro se* at the time, filed a complaint against Defendant Marriott International, Inc. *See* Dkt. No. 2. Marriott moved to dismiss the complaint, and on February 24, 2017, the Court dismissed Plaintiff's hostile work environment claims under city and state law for lack of subject matter jurisdiction, but otherwise denied Marriott's motion. *See generally Rasmy v. Marriott Int'l, Inc.*, No. 16-CV-4865 (AJN), 2017 WL 773604 (S.D.N.Y. Feb. 24, 2017). Shortly before the Court's decision on the motion to dismiss issued, Plaintiff, now represented by counsel, moved to amend his complaint to add the Individual Defendants and new claims under city law and 42 U.S.C. § 1981. After the decision, and now with Defendants' consent to part of Plaintiff's proposed amendment, Magistrate Judge Peck, to whom the matter was referred for general pretrial supervision, granted Plaintiff's leave to amend. *See* Dkt. No. 58. The resulting First Amended Complaint, *see* Dkt. No. 63, is operative here. On August 31, 2017, Defendants first moved for summary judgment, but because of various filing errors, the briefing considered here was filed on October 25, 2017.

## II. Factual Background[2]

Gebrial Rasmy, also known as Kamal, was born in Egypt and is a Coptic Christian. Pl.'s 56.1 Opp. ¶ 1. Defendant Marriott manages the JW Marriott Essex House ("the Essex House"), located at 160 Central Park South, where Plaintiff has worked as a banquet server since the

---

[2] Except as otherwise noted, the following facts are not in dispute and are taken from Plaintiff's Opposition to Defendants' 56.1 Statement ("Pl.'s 56.1 Opp."). *See* Dkt. No. 92.

1990s. Pl.'s 56.1 Opp. ¶¶ 2, 7. Efstratiou, born in Greece, Tehrani, born in Iran, and Pongpanta,

born in Thailand, also work as banquet servers at the Essex House. Pl.'s 56.1 Opp. ¶¶ 4-6.

Doherty, born in the United Kingdom, is the Director of Human Resources for the Essex House.

Pl.'s 56.1 Opp. ¶ 3. At all relevant times, the banquet servers' employment was governed by a

collective bargaining agreement ("CBA") negotiated with the New York Hotel and Motel Trades

Council, AFL-CIO (the "Union"). Pl.'s 56.1 Opp. ¶ 8. The banquet servers elect their own co-

workers to serve as delegates to the Union; the delegates act as intermediaries between the

workers and the Union and Essex House management, but receive no additional compensation

for these duties. Pl.'s 56.1 Opp. ¶¶ 9, 11-12. At all relevant times, Efstratiou and Tehrani served

as union delegates for the senior banquet servers, including Rasmy. Pl.'s 56.1 Opp. ¶ 14.

## A. Initial Complaints (2012-2013)

In or around September 2012, Marriott took over the management of the Essex House,

and soon after conducted training for the banquet team on the company's policies prohibiting

discrimination and harassment. Pl.'s 56.1 Opp. ¶¶ 18, 20. In late 2012, Rasmy told Doherty that

associates were abusing scheduling practices, abusing their "power," and engaging in practices

that caused Marriott to lose money. Pl.'s 56.1 Opp. ¶¶ 24-25. Doherty and others investigated

these charges. Pl.'s 56.1 Opp. ¶ 26. According to Doherty, based on her investigation, she

informed Rasmy that the concerns he raised were permitted past practices under the CBA and

would continue. Pl.'s 56.1 Opp. ¶ 27.[3] Rasmy claims Doherty told him "I am sick and tired of

this shit, and I'm sick and tired also because of you I have to send tons of fucking documents to

[Arne Sorenson] because you have called the corporate about possible overcharging." *Id.*

---

[3] According to Rasmy, in the early 1990s he reported wage theft at the Essex House to the corporate office, and within a week his report was verified and individuals were escorted out of work in handcuffs. Plaintiff's Additional Material Facts ("Pl.'s Add'l Facts"), Dkt. No. 92, ¶ 3.

The parties dispute the authority given to and exercised by the Union delegates. According to Marriott, when they took over management of the Essex House, they asked the delegates to assist in getting Marriott managers up to speed on banquet department pay practices to ensure Marriott complied with the CBA and past practices, but that non-delegates like Rasmy were unaware of this. Pl.'s 56.1 Opp. ¶¶ 22-23. Rasmy claims that the delegates did not just help but were given supervisory authority, including the power to send employees home, and that the granting of such authority was made clear to him. *Id.* Marriott insists that delegates have no authority to fire, hire, discipline, or otherwise exercise supervision over associates, including Rasmy. Pl.'s 56.1 Opp. ¶ 13. After Doherty's investigation, Rasmy remained unhappy that Tehrani, one of the delegates, was "abusing his 'power.'" Pl.'s 56.1 Opp. ¶ 29. Defendants claim Rasmy got into an altercation with Tehrani on June 5, 2013, and an eyewitness stated that "it looked like there was a risk of escalation to physical contact." Pl.'s 56.1 Opp. ¶¶ 30-31. Rasmy denies this. *Id.*

Shortly after this "dispute," Rasmy attended a grievance meeting with the Union regarding an unrelated altercation that occurred the same day, at which meeting Rasmy publicly accused the delegates of overcharging the Essex House and of wage theft. Pl.'s 56.1 Opp. ¶¶ 32-33. One month later, Rasmy raised the same theft complaints to Doherty again. Pl.'s 56.1 Opp. ¶ 36. Doherty gave Rasmy the contact information for Marriott's Business Integrity Line, and continued an investigation into the "dispute" between Rasmy and Tehrani. Pl.'s 56.1 Opp. ¶¶ 37-38. In September 2013, Rasmy and others told Doherty that they heard Efstratiou tell Tehrani to "send the old man home," referring to an older banquet server, and although Marriott's investigation could not substantiate the allegation, Doherty reminded Efstratiou that such language was improper. Pl.'s 56.1 Opp. ¶¶ 39-41. In October 2013, Rasmy delivered a letter to

management reiterating his belief that Tehrani should not be making changes to the service diagrams. Pl.'s 56.1 Opp. ¶ 42.

According to Marriott, in October 2013, the company "reinforced" its Policy Prohibiting Harassment and Unprofessional Conduct to the entire banquet staff, including holding a special training meeting on or about October 25, 2013. Pl.'s 56.1 Opp. ¶¶ 44-50. Rasmy disputes that this meeting occurred, but does not dispute that he received the anti-harassment policy from Doherty and acknowledged receipt by signing the document. Pl.'s 56.1 Opp. ¶ 48. One week later, Marriott claims it delivered a PowerPoint presentation and discussed the behavior standard with the entire banquet staff, at which presentation Rasmy publicly accused Efstratiou and Tehrani of manipulating schedules and engaging in wage theft, charges which management answered. Pl.'s 56.1 Opp. ¶¶ 51-56. Plaintiff denies having participated in this meeting. *Id.*

In November 2013, Rasmy called the Business Integrity Line, and Area Director of Associate Relations Sue Birnie investigated Rasmy's renewed allegations of wage theft, concluding that they were unfounded. Pl.'s 56.1 Opp. ¶¶ 59-61. Additionally, Rasmy approached Doherty with allegations that Efstratiou and Tehrani called him a "rat," although Rasmy alleges that he reported broader on-going discrimination in the workplace, and not just the one epithet. Pl.'s 56.1 Opp. ¶ 62. Doherty conducted an investigation, which Plaintiff claims was lackluster and ineffective, and could not substantiate the allegations; nonetheless she claims to have warned Efstratiou and Tehrani that such behavior was prohibited by company policy. Pl.'s 56.1 Opp. ¶¶ 63-64.

**B. Further Investigations and Alleged Altercations (2014-2016)**

In or about May 2014, Rasmy called the Business Integrity Line again and Birnie again investigated and found no wrongdoing by the delegates. Pl.'s 56.1 Opp. ¶¶ 65-66. That summer,

Doherty investigated a claim Efstratiou asserted against Rasmy, namely that Rasmy allegedly threatened him. Pl.'s 56.1 Opp. ¶ 67. During her investigation, Rasmy told Doherty for the first time that Efstratiou had called him "fucking Egyptian," "camel," and "mummy," although Rasmy claims Doherty knew or should have known of the on-going harassment well before late 2014. Pl.'s 56.1 Opp. ¶ 68. Rasmy never reported being physically threatened by the small Efstratiou, and Doherty, who was unable to substantiate Rasmy's claims, nonetheless warned the delegates that name-calling would not be tolerated. Pl.'s 56.1 Opp. ¶¶ 69-71.

In January 2016, Rasmy drove to Marriott's corporate headquarters in Maryland and spoke with Keith Wallace, Senior Director of Global Investigations, about his allegations of wage theft. Pl.'s 56.1 Opp. ¶ 72. Rasmy also claims he made allegations of harassment and retaliation to Wallace that Wallace did not investigate. Pl.'s 56.1 Opp. ¶¶ 72-73. Wallace investigated Rasmy's wage theft claims and was unable to substantiate them. Pl.'s 56.1 Opp. ¶¶ 73-74.

On May 9, 2016, Rasmy and Pongpanta worked at an event together, and near the end of the night, a dispute arose between them in the hallway between the restaurant and the kitchen. Pl.'s 56.1 Opp. ¶¶ 75-76. According to Marriott, the surveillance cameras point into the restaurant and kitchen and did not capture footage of the hallway, although Rasmy disputes this fact. Pl.'s 56.1 Opp. ¶¶ 77-78. Marriott promptly investigated the incident; Pongpanta reported that Rasmy tried to strike him with a wooden board, called him a "piece of shit," threatened to take him "outside," took a swing at him, and spat in his face and Rasmy reported that Pongpanta spat in *his* face and told Rasmy that he was going to get his gun and "finish" Rasmy. Pl.'s 56.1 Opp. ¶¶ 79-80. The primary eyewitness to the altercation told Marriott that Rasmy was "speaking profanity to" Pongpanta and "verbally harassing" him "in a violent angry manner."

Pl.'s 56.1 Opp. ¶ 81. Rasmy claims that Pongpanta yelled at him "You got no fucking witnesses. I got witnesses," Pl.'s 56.1 Opp. ¶ 81, and the eyewitness claims Rasmy became "very aggressive" toward the eyewitness, approached him "in an intimidating manner and stated, 'Are you going to be witness for him now?'" Pl.'s 56.1 Opp. ¶¶ 81-82. Rasmy and Pongpanta filed reports against each other with the local police precinct. Pl.'s 56.1 Opp. ¶ 83.

On May 14, 2016, Marriott suspended Rasmy and Pongpanta pending further investigation. Pl.'s 56.1 Opp. ¶ 84. After the suspensions were implemented, Marriott received letters from Rasmy's peers raising past instances of unprofessional conduct. Pl.'s 56.1 Opp. ¶ 86. Plaintiff disputes the specific instances and suggests that these coworkers were coerced or threatened into signing petitions against him, but does not dispute the letters' existence.

### C. Plaintiff's Termination

Marriott terminated both Rasmy and Pongpanta for the May 9 incident, effective May 24, 2016. Pl.'s 56.1 Opp. ¶ 87. Both Rasmy and Pongpanta were treated the same, and the decision to terminate them, while recommended by Doherty, was made by the business leaders. Pl.'s 56.1 Opp. ¶¶ 88-89. Pongpanta filed a grievance through the Union and Marriott refused to reinstate Pongpanta at the first-step grievance meeting nor at the second-step grievance mediation. Pl.'s 56.1 Opp. ¶¶ 90-92. When mediation was unsuccessful, the Union pursued arbitration over Pongpanta's termination. Pl.'s 56.1 Opp. ¶ 93. Rasmy failed to appear at the arbitration despite service of a subpoena, and over Marriott's objections, and due largely to Rasmy's absence, the arbitrator ordered Pongpanta's reinstatement. Pl.'s 56.1 Opp. ¶ 94. Rasmy never filed a grievance through the Union and instead filed this lawsuit on June 22, 2016. Pl.'s 56.1 Opp. ¶¶ 96-97.

### III. Legal Standard

7

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that it is entitled to relief as a matter of law. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence ... on an essential element" of the non-moving party's claim. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). There is a genuine issue of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *accord Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In doing so, the non-moving party ' "must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

Although "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions[, n]onetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citations omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## IV. Discussion

### A. Plaintiff's Religious, National Origin, and Race Discrimination Claims

Plaintiff alleges religious, national origin, and racial discrimination against all Defendants. As an initial matter, "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). The differences that do exist are inapplicable here, except that the individual Defendants cannot be held liable under Title VII. *Id.* at 225-227 (explaining the differences).

Under Title VII, to withstand a motion for summary judgment, a discrimination plaintiff must satisfy the burden-shifting analysis set forth in *McDonnell Douglas*. *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). A plaintiff first bears the minimal burden of establishing a *prima facie* case of discrimination. If he is so able, he is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event the presumption disappears and the plaintiff bears the greater burden of proving that the employer's proffered reason was mere pretext for discrimination. *Id.*

To establish a *prima facie* case of discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent. *McDonnell Douglas*, 411 U.S. at 802. Defendants offer no challenge to Plaintiff's ability to satisfy the first three elements and instead focus on the fourth element. *See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Opp."), Dkt. No. 93, at 3-6.

### 1. Plaintiff Fails To Establish a *Prima Facie* Case of Discrimination

While the burden of making the *prima facie* showing of discrimination is *de minimis*, *see Joseph v. Leavitt*, 465 F.3d 87 (2d Cir. 2006), Plaintiff has pointed to no facts suggesting that adverse employment actions taken against him – namely, his termination – were at all related to his religious practice as a Coptic Christian, or his Egyptian background. Circumstances contributing to an inference of discrimination may include invidious comments about people in the protected class, or more favorable treatment of employees outside of the protected class. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). Accordingly, Plaintiff

may satisfy his burden on the fourth element of the *prima facie* test by showing that he was "similarly situated in all material respects" to other individuals against whom he would have the court compare him. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

As the undisputed facts demonstrate, following the May 9, 2016 altercation between Plaintiff and Mr. Pongpanta, both men were suspended and later terminated. While Pongpanta was later reinstated by the ruling of an arbitrator – over Marriott's objections – both men were treated identically. Mr. Pongpanta is neither Christian nor Egyptian. In cases in which multiple employees are terminated for the same infraction, courts generally find that the plaintiff has failed to meet the fourth element – that circumstances give rise to an inference of discriminatory intent. *See, e.g.*, *Morales v. Rooney*, No. 06-CV-1556 (RNC), 2010 WL 11469915, at *8 (D. Conn. Mar. 31, 2010) (no *prima facie* discrimination because similarly situated fire inspectors also terminated because of same misconduct); *Randolph v. CIBC World Mkts.*, No. 01-CV-11589 (RWS), 2005 WL 704804, at *13 (S.D.N.Y. Mar. 29, 2005) (no *prima facie* case since similarly situated employees fired for violation of same policy). Plaintiff provides no evidence that supports a finding that other similarly situated employees outside his protected class received more favorable treatment.

Additionally, Plaintiff presents no direct evidence supporting an inference of discrimination related to his termination. Rasmy claims that Doherty complained that his repeated allegations of wage theft created more work for her, but no reasonable juror could find that this suggests Doherty harbored an animus against Egyptians or Coptic Christians. *Cf. Clemente v. N.Y. State Div. of Parole*, 684 F. Supp. 2d 366, 374 (S.D.N.Y. 2010) (while "evidence of anti-union animus permeates the record," no evidence suggesting union leader plaintiff treated differently because she was Hispanic). In his opposition to summary judgment,

11

Plaintiff recounts allegations that Doherty accused him of attempted murder and refused to show Rasmy footage of the incident she claimed was captured on camera and concludes that this alleged harassment "can only logically be attributable to discriminatory animus," but accepting Plaintiff's version of events as true, no reasonable jury could find that the allegations support a reasonable inference of discrimination.

Plaintiff does allege that co-workers Pongpanta and Efstratiou made comments to Plaintiff relating to his national origin and religion, but Plaintiff offers no evidence – disputed or undisputed – connecting the comments to his termination. Even accepting Plaintiff's argument that union delegates like Efstratiou had supervisory authority over Plaintiff, "where a supervisor has no input into a termination decision, that supervisor's beliefs, actions, and statements do not give rise to a discrimination claim." *Stevens v. New York*, No. 09-CV-5237 (CM), 2011 WL 3055370, at *6 (S.D.N.Y. July 20, 2011).

In short, Plaintiff proffers no evidence – either of discriminatory animus on the part of someone involved in his termination or of a comparative nature showing disparate treatment – that supports an inference of discriminatory intent. Accordingly, his discrimination claim fails as a matter of law.

### 2. Even If Plaintiff Had Established a *Prima Facie* Case of Discrimination, He Fails To Rebut Marriott's Non-Discriminatory Reasons as Pretextual

Even assuming that Plaintiff had established a *prima facie* case of discrimination, however, his claim would still fail as a matter of law. After a plaintiff demonstrates a *prima facie* case of discrimination, the burden shifts to the defendants to "articulate some legitimate, nondiscriminatory reason for its action," although it "need not persuade the court that it was actually motivated by the proffered reason." *Delaney*, 766 F.3d at 168 (internal quotation marks

omitted). If the defendant makes this showing, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to show "that a reasonable jury could conclude that the employer's determination was in fact the result of discrimination." *Ghent v. Moore*, 324 F. App'x 55, 56 (2d Cir. 2009) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008)). At this step, the court considers evidence including "the strength of the plaintiff's prima facie case," as well as "the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000)) (internal quotation marks omitted; alterations in original). Plaintiff's claim fails because he cannot provide sufficient evidence to support a finding by a reasonable jury that Marriott's proffered non-discriminatory reasons for his termination were pretext for discrimination.

Marriott has met its burden of production in presenting a legitimate, nondiscriminatory reason for Plaintiff's termination. Marriott claims that Plaintiff was terminated based on its investigation of the May 9 incident, during which Rasmy was alleged to have threatened Pongpanta with violence and spit in his face. Pl.'s 56.1 Opp. ¶¶ 79-80. Regardless of the truth of what actually occurred between the men, it is undisputed that the primary eyewitness to the altercation at least partially supported Pongpanta's allegations. *Id.* ¶ 81. And the altercation is undoubtedly a legitimate reason for discharge. *See, e.g., Anderson v. Hertz Corp.*, 303 F. App'x 946, 947-48 (2d Cir. 2008) (deeming a physical altercation a legitimate, non-discriminatory reason for termination); *Oliveras v. Wilkins*, No. 06-CV-3578 (DAB)(MHD), 2012 WL 3245494, at *12 (S.D.N.Y. June 26, 2012), *report and recommendation adopted by* 2012 WL 3245493 (Aug. 3, 2012) (same).

However, when the burden shifts back to the Plaintiff to show that a reasonable jury could find that the employer's proffered explanation is pretext for discrimination, he fails to meet his burden. The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail – either by providing that a discriminatory motive, more likely than not, motivated the defendants or by proving that the reasons given by the defendants are not true and that discrimination is the real reason for the actions." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (internal quotation marks omitted). Rasmy must offer "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and alterations omitted).

Plaintiff has not provided sufficient evidence to support a rational finding of pretext by a reasonable jury. In opposing summary judgment on his discrimination claims, Plaintiff simply states in a conclusory manner that he "has put forth sufficient evidence that would allow the jury to determine whether Defendants acted with discriminatory animus when terminating Plaintiff's employment." Opp. at 22. He adds a few more details in opposing summary judgment with respect to his retaliation claims, elaborating that Marriott's proffered reason for termination is pretextual because: "(1) Defendants' proffered reason did not happen; (2) Defendants suspended and terminated Plaintiff because Plaintiff opposed Pongpanta's unlawful behavior; (3) Defendants have proved to be inconsistent and arbitrary when doling out discipline for similar offenses and; (4) Defendants refused to investigate or take disciplinary action when Plaintiff complained, yet were more than willing to haphazardly investigate, suspend, and terminate Plaintiff." Opp. at 16 (emphasis in original). Nonetheless, despite the addition of a few scant

details, for substantially the same reasons Rasmy failed to establish his *prima facie* case of discrimination, Rasmy has also not offered sufficient evidence to support a rational finding of pretext.

Specifically, Rasmy invites the inference that because, in his telling, he was not the aggressor in the altercation and then was suspended prior to Marriott conducting a "meaningful investigation," that this course of events suggests a pretextual reason for termination. Opp. at 16-17. However, Rasmy does not specify how Marriott's investigation was insufficient, and the record reflects that Marriott reviewed the incident reports both Pongpanta and Rasmy provided, reviewed available video surveillance,[4] interviewed Pongpanta, Rasmy, and the eyewitness, reviewed the eyewitness's written statement, and interviewed an additional potential witness. *See* Reply at 3-4 (detailing the steps taken). Plaintiff has not explained how this investigation was deficient or a departure from the business's normal protocol such that it might support an inference of discriminatory animus. Plaintiff also asserts that Doherty attempted "to dissuade Plaintiff from reporting discrimination." Opp. at 15. But that allegation suggests a retaliatory motive, not a discriminatory motive.

In sum, even drawing all inferences in Rasmy's favor, no reasonable jury could conclude that Marriott acted with discriminatory animus in suspending and terminating Rasmy after the altercation. "A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is...insufficient." *Risco v. McHugh*, 868 F. Supp. 2d 75, 99 (S.D.N.Y. 2012).

---

[4] Mr. Rasmy offers no proof that Marriott has additional video they have refused to provide him. The non-moving party ' "must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

For the foregoing reasons, Plaintiff's discrimination claims under Title VII and Section 1981 fail as a matter of law.

### 3. Plaintiff Cannot Establish Liability against the Individual Defendants for Discrimination Either

To establish individual liability under § 1981, a plaintiff must demonstrate "some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (internal quotation marks and citation omitted). As noted above, Rasmy has alleged that his fellow banquet servers made discriminatory remarks, but has failed to demonstrate how any of them were involved in his termination. With respect to Doherty, even if she was involved in terminating Plaintiff, as stated above, Plaintiff has not connected her to any discriminatory comments or actions. Accordingly, Plaintiff cannot establish individual liability under § 1981.

### B. Plaintiff's Retaliation Claim

As with the disparate treatment claims addressed above, federal retaliation claims are reviewed under the familiar burden-shifting approach of *McDonnell Douglas. See Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

In order to establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (internal quotation marks and citation omitted). The plaintiff's burden of proof as to this first step "has been characterized as 'minimal' and '*de minimis*.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

As an initial matter, it is important to clarify that Plaintiff's wage theft complaints are not a "protected activity" as contemplated by Title VII. *See, e.g.*, *Kamrowski v. Morrison Mgmt. Specialist*, No. 05-CV-9234 (KMK), 2010 WL 3932354, at *20 (S.D.N.Y. Sept. 29, 2010) ("Title VII does not protected employees from retaliation for opposing misbehavior of co-workers or supervisors that is unrelated to discrimination on account of one of the protected classes."); *Santucci v. Veneman*, No. 01-CV-6644 (CBM), 2002 WL 3125515, at *3 (S.D.N.Y. Oct. 8, 2002) (collecting cases for the same proposition). Accordingly, in considering whether Plaintiff can establish the third prong of the *prima facie* test, the question is whether his complaints to Doherty and Marriott about *discrimination* are causally connected to his termination.

It is on this third prong that Plaintiff's claim fails, as no reasonable jury could find that Plaintiff was terminated *because* he had complained of discrimination. To demonstrate this causal link, the "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). That is, Rasmy would have to show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91.

Plaintiff relies heavily on the liberal standards at play, noting that "[t]he determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of disputed facts, rather than a determination that there is no genuine dispute as to any material fact." Opp. at 12 (quoting *Zann Kwan*, 737 F.3d at 846 n.5). However, Plaintiff carries the burden of establishing his *prima facie* case. Plaintiff has no direct evidence – disputed or undisputed –

suggesting that his termination was related to his complaints of discrimination. He seems to suggest that there is circumstantial evidence of discrimination, pointing to Doherty's alleged statement to him that Plaintiff "better keep [his] fucking mouth shut if [he] want[s] to keep [his] job here," but offers no reason to believe Doherty's reaction related to his complaints of *discrimination* rather than his reports of alleged wage theft. In general, plaintiffs may also plead a causal connection by showing temporal proximity – that the protected activity was followed closely in time by adverse employment action. *See Vega*, 801 F.3d at 90-91; *Zann Kwan*, 737 F.3d at 846. However, in this case, Plaintiff alleges to have complained about discrimination for years prior to his termination, and the last complaint he raised – in January 2016 – is five months prior to his termination. On the basis of this undisputed timeline of events, no reasonable juror could find that Marriott would not have terminated Rasmy but for his complaints of discrimination.

As detailed above, even if Plaintiff were able to establish a *prima facie* case of retaliation, Defendants have proffered a legitimate explanation for Plaintiff's termination – that it was a result of an investigation into reports of a physical altercation between him and Pongpanta – and no reasonable jury could conclude that Defendants' stated reason is mere pretext for retaliatory motives linked to his protected activities. As Plaintiff states in his brief, "[a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." Opp. at 13-14 (quoting *Zann Kwan*, 737 F.3d at 846-47). However, Plaintiff has not offered sufficient evidence that would allow a reasonable juror to make a rational finding of pretext. The statements he

points to as suggesting retaliatory motive, such as Doherty's alleged comment that Plaintiff "better keep [his] fucking mouth shut if [he] want[s] to keep [his] job here," do not connect to any discriminatory animus linked to any protected status, and Plaintiff's conclusory statement that "Defendants' haphazard, inconsistent, and disparate investigation methods indicate" pretext is not based on any evidence in the record. Opp. at 17. Plaintiff's sole citation supporting this contention references Plaintiff's allegation that in 2013 Doherty falsely accused Rasmy of having grabbed Efstratiou and attempted to throw him onto a slicing machine. *See* Opp. at 17 (citing Pl.'s Add'l Facts ¶ 12). But even making all available inferences in the Plaintiff's favor, no reasonable jury would conclude that this allegation dating to 2013 supports the argument that the stated reasons for his termination three years later were pretextual.

In sum, Defendants are entitled to summary judgment on Plaintiff's retaliation claim as a matter of law.

## C. Hostile Work Environment Claim

### 1. Defendants Are Entitled to Summary Judgment under Federal Law

In order to survive summary judgment on a federal hostile work environment claim, a plaintiff must produce evidence that "the workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment." *Patterson*, 375 F.3d at 227 (alterations and internal quotation marks omitted). The test has "objective and subjective elements: the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "A hostile working environment is shown when the incidents of harassment occur either in concert

or with regularity that can reasonably be termed pervasive," *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (citation omitted), or through evidence of "a single incident of harassment that is 'extraordinarily severe.'" *Id.* (citations omitted). Whether a reasonable person would find a given work environment hostile depends on the "totality of the circumstances," consideration of which includes factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Harris*, 510 U.S. at 23.

The harassment Rasmy alleges does not establish a hostile work environment under Title VII as a matter of law. Plaintiff argues that whether the comments he alleges "were severe and pervasive and/or above a petty slight or trial inconvenience…is a question of fact for a jury." Opp. at 10. This is not the case. Courts are regularly tasked with reviewing the totality of the circumstances to determine whether Plaintiff has met the elements required to establish a federal work environment claim, including whether the misconduct is "severe or pervasive enough to create an objectively hostile or abusive work environment." *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010) (internal quotation marks and citation omitted).

Rasmy's subjective perception notwithstanding, his allegations are insufficient to meet the objective element. First, comments made about Rasmy being a "rat" do not relate to his membership in any protected class, and so are not relevant to Plaintiff's hostile work environment claim. *See, e.g., Bright v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *9 (E.D.N.Y. Nov. 3, 2014) (threat without indication it was motivated by a discriminatory animus does not raise a material issue of fact on plaintiff's hostile work environment claim), *aff'd* 639 F. App'x 6 (2d Cir. 2015); *Nolley v. Swiss Reins. Am. Corp.*,

857 F. Supp. 2d 441, 456 (S.D.N.Y. 2012). Similarly, Plaintiff's allegations about Doherty's threatening behavior are not alleged to relate to Rasmy's status as a Christian or Egyptian. Plaintiff alleges that Doherty accused him of attempted murder but then refused to show Rasmy video footage she claims showed the incident. *Id.* at 8. However, Plaintiff's claim that the Doherty's alleged behavior "can only logically be attributable to discriminatory animus" is entirely speculative and unsupported by any evidence in the record. *See, e.g., Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (rejecting Plaintiff's bare speculation linking behavior to discriminatory motive as insufficient to defeat a motion for summary judgment); *accord Boise v. New York Univ.*, No. 03-CV-5862 (RWS), 2005 WL 2899853, at *4 (S.D.N.Y. Nov. 3, 2005) ("Personal speculation is insufficient as a matter of law to raise an inference of discrimination.").

Second, Plaintiff's religious discrimination claim is based upon allegations that Efstratiou made offensive remarks not directed at Plaintiff. Plaintiff writes in his opposition brief that Efstratiou would tell Plaintiff, who he knew to be a devout Christian, that "God is garbage" and "Religions [are] for the stupid people," but in his deposition Plaintiff does not allege that Efstratiou said any of these statements *to* him.[5] *See* Tr. 400:12-19 ("He believe that the idea of God is garbage. Religions [are] for the stupid people."). While discriminatory behavior not directed at the plaintiff can still contribute to the creation of an overall hostile work environment, *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 571 (2d Cir. 2000), general anti-religion statements

---

[5] Moreover, the coworker who is alleged to have said derogatory things about Christians, Efstratiou, is himself Christian. While people can discriminate against members of their own group, *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998), the shared identity may be seen to undermine inferences of discriminatory animus. *See, e.g., Olorode v. Streamingedge, Inc.*, No. 11-CV-6934 (GBD)(AJP), 2014 WL 1689039, at *16 (S.D.N.Y. Apr. 29, 2014), *report and recommendation adopted by* 2014 WL 3974581 (Aug. 13, 2014); *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005).

of this nature not directed at the plaintiff personally are "stray remarks at best." *See Velez v. SES Operating Corp.*, 07-CV-10946 (DLC), 2009 WL 3817461, at *11 (S.D.N.Y. Nov. 12, 2009) (noting that a discriminatory comment overheard by plaintiff is best characterized as a "stray remark" that is not probative of a discriminatory motive); *Green v. Harris Publ'ns, Inc.*, 331 F. Supp. 2d 180, 192 (S.D.N.Y. 2004) (granting summary judgment on the hostile work environment claim and finding that two racially discriminatory comments overheard by the plaintiff "were stray remarks at best"). There are no facts in the record to support the inference that Plaintiff was personally targeted by any anti-Christian animus, nor that he experienced anything more than a petty slight in his work environment regarding his religious practice.

Third, Plaintiff alleges numerous comments made by Efstratiou and Pongpanta about his national origin – such as "Egyptian mother fuck," "mummy mother fucker" – and, while unsupported by the record, Plaintiff contends in his opposition brief that these comments were an "almost daily part of Plaintiff's work-life." Opp. at 6. In his deposition, Plaintiff stated that Efstratiou "used to refer to me while I'm passing by him, He's a fucking Egyptian rat. He's a fucking mummy. Where's the fucking mummy? Is this his table? All kinds of things. And that went on and on and on and on." Pl.'s Add'l Facts ¶ 5 (citing Rasmy Tr. 399:17-400:19). Rasmy also alleged that Pongpanta said "Here is the Egyptian mother fuck," or "He's a mummy mother fucker." *Id.* (citing Rasmy Tr. 193:6-10). For reasons explained below, this evidence is insufficient to establish liability under federal law.

Fourth and finally, Plaintiff points to other incidents or statements he argues are part of the pattern of discriminatory behavior. For example, Rasmy alleges that Defendants circulated petitions against him containing false accusations of workplace improprieties in order to harass

him. *See* Pl.'s Add'l Facts ¶¶ 6-7.[6]  Rasmy claims that Tehrani and Pongpanta pressured his

manager, Jay Jones, to make a false claim as well, and that Jones later admitted making it up.

Opp. at 7.[7]  Again, as with the "rat"-oriented comments, Plaintiff points to no evidence in the

record – disputed or undisputed – that suggests these actions were discriminatory in nature.

Moreover, to the extent that Plaintiff attempts to point to any insufficiencies in Marriott's

investigation of his claims, courts in this Circuit have been clear that a failure to remediate

cannot itself contribute to a hostile work environment claim under federal law. *See Fincher v.

Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (collecting cases).

Accordingly, the evidence of discrimination Plaintiff offers amounts to the third category

of evidence described above: comments made by Efstratiou and Pongpanta about his Egyptian

nationality.  Applying these allegations to the relevant standard, Defendants are entitled to

summary judgment under Title VII.  As noted above, to survive summary judgment a plaintiff

must produce evidence of discriminatory ridicule "that was sufficiently severe or pervasive to

alter the conditions of the victim's employment." *Patterson*, 375 F.3d at 227 (alterations and

internal quotation marks omitted).

Here, the incidents Rasmy describes are not sufficiently "severe" as to have altered his

working conditions.  In *Mathirampuzha v. Potter*, the Second Circuit concluded that an incident

in which the plaintiff's supervisor "grabbed the plaintiff's arm, punched him in the shoulder and

chest, spit in his face, and poked him in the eye" was "not so severe as to alter materially the

plaintiff's working conditions." 548 F.3d 70, 73, 79 (2008) (contrasting the incident with "rape"

---

[6] Plaintiff did not provide the full section of the transcript of his own deposition that he relies upon for support, so his self-supported claim cannot be verified by the Court.
[7] Again, Plaintiff did not provide the full section of the transcript of his own deposition that he relies upon for support, so his self-supported claim cannot be verified by the Court.

or an "obscene and humiliating verbal tirade that undermines the victim's authority in the workplace"). If a physical encounter of the type alleged in *Mathirampuzha* was not severe enough, then no rational jury could find that the incidents Rasmy alleges were severe enough to have altered his working conditions. *Cf. Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 WL 845723, at *7 (S.D.N.Y. Feb. 26, 2015) (holding that one incident where a co-worker looked "aghast" when the plaintiff told her his age and "consequently made fewer requests of him ... falls well short of being so extraordinarily severe to have altered the conditions of his working environment" (internal quotation marks omitted)).

As for the pervasiveness of the incidents Rasmy alleges, while there is no support in the record for his contention in his opposition brief that the comments from Efstratiou and Pongpanta were an "almost daily part of Plaintiff's work-life," Opp. at 6, a reasonable jury might still conclude that Plaintiff's testimony that Efstratiou "used to refer to me" using various derogatory phrases and that the remarks "went on and on and on" suggests pervasive discrimination. Nonetheless, the Court need not decide whether the alleged remarks amount to "pervasive" conduct, because there is nothing in the record from which a reasonable jury could conclude that the alleged discrimination "alter[ed] the conditions of [his] employment." *Cruz*, 202 F.3d at 570. As offensive as Plaintiff's coworkers' alleged statements were, when considering the factors set forth by the Supreme Court in *Harris* and noted above, the record presents a plaintiff who worked side-by-side with these coworkers for many years without incident, has not alleged that he was ever physically threatened, and described no way in which the comments, however degrading, interfered with his work performance.

Given the totality of circumstances, including the unmistakable inference from the timing of the comments after years without incident that his coworkers were likely motivated by

personal animus in response to Plaintiff's allegations of wage theft more than any discriminatory animus, no reasonable jury could find Plaintiff's alleged treatment so severe or pervasive that his work conditions were altered. *See, e.g.*, *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that a supervisor's occasional racist remarks "fail[ed] to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment"); *De la Cruz v. City of N.Y.*, 783 F. Supp. 2d 622, 644 (S.D.N.Y. 2011) (finding that a defendant's "stray remarks" regarding the plaintiff's seniority and lack of physical fitness did not establish a hostile work environment claim). Thus, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claims under Title VII.

## IV. The Court Declines to Exercise Supplemental Jurisdiction over the Remaining State and Local Law Claims

The Supreme Court has commented that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court finds no reason to deviate from normal practice here. Because "the Court has not yet invested resources necessary to resolve [these] claims," and because "[t]he extensive discovery already taken is likely sufficient to enable [these] claims to be evaluated in state court without any additional discovery," *see Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393 (S.D.N.Y. 2013), the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims and thus dismisses the claims without prejudice.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion as to all federal claims, and DECLINES to exercise supplemental jurisdiction over the remaining NYSHRL and NYCHRL claims and dismisses them without prejudice. Accordingly, the Clerk of Court is respectfully directed to enter judgment and close the case. This order resolves Dkt. No. 83.

SO ORDERED.

Dated: September 28, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge