18-3260-cv
*Gebrial Rasmy v. Marriott International, Inc., et al.*

1:16-cv-04865-AJN-OTW

# In the
# United States Court of Appeals
## for the Second Circuit

———————

AUGUST TERM 2019

No. 18-3260-cv

GEBRIAL RASMY,
*Plaintiff-Appellant*,

v.

MARRIOTT INTERNATIONAL, INC. D/B/A JW MARRIOTT ESSEX HOUSE
HOTEL, ESTRATUE STAMATIS, individually, KAREN DOHERTY,
individually, TEHRANI MEHRANI, individually, AND SESSKON
PONGPANTA, individually,
*Defendants-Appellees*.

———————

On Appeal from the United States District Court
for the Southern District of New York

———————

ARGUED: DECEMBER 11, 2019
DECIDED: MARCH 6, 2020

———————

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Mar 06 2020

CERTIFIED COPY ISSUED ON 03/06/2020

Before: CABRANES, BIANCO, *Circuit Judges*, and REISS, *Judge*.[*]

———————

Plaintiff-Appellant Gebrial Rasmy appeals from a September 28, 2018 judgment entered in the Southern District of New York (Alison J. Nathan, *Judge*) principally granting Defendants-Appellees' motion for summary judgment dismissing Rasmy's claims brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Rasmy alleged a discriminatory hostile work environment and retaliation for complaining about discrimination. For the reasons set forth below, we **VACATE** the September 28, 2018 judgment of the District Court and **REMAND** the cause to the District Court for trial.

———————

> STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, New Paltz, NY, *for Plaintiff-Appellant*.
>
> MARK A. SALOMAN, FordHarrison LLP, Berkeley Heights, NJ, *for Defendants-Appellees.*
>
> GAIL S. COLEMAN, (James L. Lee, Jennifer S. Goldstein, and Elizabeth E. Theran, *on the*

———————

[*] Judge Christina Reiss, of the United States District Court for the District of Vermont, sitting by designation.

*brief*), *for Amicus Curiae* Equal Employment
Opportunity Commission.

———————

JOSÉ A. CABRANES, *Circuit Judge*:

We consider here claims of hostile work environment and
retaliation in the context of allegations of religious and national origin
discrimination, necessarily mindful of the inevitable normative
ambiguity of allegations of "hostile work environment"
discrimination.[1]

Plaintiff-Appellant Gebrial Rasmy ("Rasmy") appeals from a
September 28, 2018 judgment entered in the Southern District of New
York (Alison J. Nathan, *Judge*) (1) granting Defendants-Appellees'
motion for summary judgment, thereby dismissing Rasmy's claims
brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and
42 U.S.C. § 1981 ("Section 1981") alleging a discriminatory hostile
work environment and discriminatory retaliation; and (2) declining to
exercise supplemental jurisdiction over Rasmy's remaining claims

———————

[1] *See generally, Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993); *Gallagher
v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998) (Jack B. Weinstein, *J., sitting by
designation*) ("An Article III judge is not a hierophant of social graces. Evaluation of
ambiguous acts such as those revealed by the potential evidence in this case
presents an issue for the jury."); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1179
(2d Cir. 1996) ("It cannot be denied that we live in a time of significant cultural
change, in which varieties of coarse conduct once taken for granted in the American
workplace appear to be subject to punishment under the law.").

brought under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Rasmy challenges the District Court's conclusions that (1) the record of undisputed facts would not permit a rational jury to find that Rasmy suffered from a hostile work environment on the basis of his religion and national origin in violation of Title VII and Section 1981; and (2) the record of undisputed facts would not permit a rational jury to find that Rasmy suffered retaliation for complaining about discrimination in violation of Title VII and Section 1981.

We hold that: (1) a hostile work environment claim does not require a plaintiff to show that he or she had been physically threatened by the defendant or that his or her work performance has suffered as a result of the claimed hostile work environment; (2) discriminatory conduct not directly targeted at the plaintiff (*e.g.*, discriminatory remarks made in the plaintiff's presence though not directly aimed at such employee) can contribute to an actionable hostile work environment; and (3) dismissal of Rasmy's retaliation claim by summary judgment was improper because Rasmy's submission in opposition to the motion presented disputed issues of material fact that should be resolved by a jury.

Accordingly, we **VACATE** the September 28, 2018 judgment of the District Court and **REMAND** the cause to the District Court for trial.

# BACKGROUND

Our account of the facts is drawn from the District Court's September 28, 2018 summary judgment order and from the record before us. In considering the entry of summary judgment in favor of a defendant, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.[2]

## I.    Factual Background

This suit arises from Rasmy's employment at the JW Essex House on Central Park South in New York City ("Essex House"), which has been managed by Defendant-Appellee Marriott International, Inc. ("Marriott") since 2012. Rasmy began working as a banquet server at Essex House in 1991 and worked there until he was fired in May 2016. Rasmy identifies himself as of Egyptian heritage and as a "devout Coptic Christian."[3]

In late 2012, Rasmy told defendant Karen Doherty ("Doherty"), Director of Human Resources for Essex House, that certain employees were engaging in wage theft and overcharging, causing Marriott to lose money. Rasmy alleges, that in response, Doherty told him, "I am sick and tired of this shit, and I'm sick and tired also because of you I have to send tons of fucking documents  . . . because you have called

---

[2] *See, e.g.*, *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010).

[3] App'x 20, 307, 311, 316-17.

corporate about possible overcharg[ing]."[4] In November or December 2012, Rasmy's complaints about wage theft became known to other employees at Essex House. After his complaint, other employees allegedly began retaliating against Rasmy, in one instance by circulating employee petitions against him. Rasmy alleges that, following his complaint, defendant Stamatis Efstratiou ("Efstratiou"), also a banquet server, as well as a union delegate, made inflammatory comments in Rasmy's presence. Among other comments, Efstratiou called him a "fucking Egyptian rat," and a "fucking mummy," and would say "where's the fucking mummy."[5] Efstratiou also told Rasmy, whom he knew to be a Coptic Christian, that "the idea of God is garbage," "[r]eligions [are] for the stupid people," and that "priests are child molesters and alcoholic[s]."[6]

In November 2013, Rasmy called Marriott's Business Integrity Line, which permits employees to speak directly to Marriott's corporate headquarters, to complain about the hostile work environment he alleges he was enduring. Sue Birnie ("Birnie"), Area Director of Associate Relations, was responsible for investigating Rasmy's complaint, including the allegations of wage theft. Rasmy told Birnie that he was being subjected to racial slurs and religious insults in the workplace, and although Birnie indicated that she would

---

[4] App'x 335, 350.

[5] App'x 380.

[6] *Id.*

investigate his allegations, she never contacted Rasmy about the results of her investigation of the overcharging or discrimination.

Rasmy also reported the alleged discrimination to Peggy Hassinger ("Hassinger") in Marriott's human resources department. Rasmy asserts he told Hassinger that Efstratiou was harassing him based on his national origin and religion by taking "great pride that Egyptian[s] do the dirty work in Greece like the Mexican[s] in the United States."[7] Efstratiou had also reportedly told Rasmy that "Greeks are the only pure race" because they "lived on the same land for 3,000 years," while "Egyptians have been occupied all their history."[8] At a Mormon convention hosted at Essex House in 2014-15, Efstratiou referred in Rasmy's presence to the Mormon guests as "fucking non-alcoholic Christian[s]" and said that "they don't drink but they marry their sister."[9] Rasmy states that he reported this incident to Hassinger, who did not follow up on Rasmy's complaint. Rasmy also asserts that he reported these incidents to Doherty who, Rasmy alleges, "laughed in [his] face" and did nothing to investigate his complaints.[10]

Rasmy states in his sworn declaration in opposition to Defendants' summary judgment motion that in addition to Efstratiou,

---

[7] *Id*.

[8] *Id*.

[9] App'x 381.

[10] App'x 381, 493-94.

two other employees of Essex House, defendants Tehrani Mehrani ("Mehrani") and Sesskon Pongpanta ("Pongpanta"), would also regularly insult and harass him. Rasmy testified that Efstratiou, Mehrani, and Pongpanta would "constantly" call him names such as "rat," "[t]he mummy," "camel," "Egyptian rat," "pretentious Christian," and "gyps[y]," and would often garnish these slurs with familiar expletives.[11] Rasmy claims that eventually Efstratiou would refuse to use Rasmy's given name, and referred to him only by these ethnic and religious insults.

In May 2015, Rasmy filed an Equal Employment Opportunity Commission ("EEOC") charge against Marriott. While Doherty states in her depositionthat she told staff that they "[should] not engage in that kind of [discriminatory] behavior,"[12] Rasmy asserted in his EEOC charge that Doherty "explicitly conveyed to [him] how upset she [was] about the extra work [he] caused her because of [his] complaints."[13] Rasmy also alleges that after he filed the EEOC charge, Doherty "verbally abused" him and threatened him with "termination under false pretenses."[14] Doherty allegedly also told Rasmy that another employee had filed a complaint against him, but she did not allow him to see evidence of that complaint. Finally, Rasmy claims that after he

---

[11] App'x 93-94, 200-01, 357, 371, 484, 493, 496.

[12] App'x 203-05.

[13] App'x 493-94.

[14] App'x 494.

8

made "four or five complaints," Doherty called him into her office and told him: "keep your mouth shut about anything [that] happen[s] in this hotel or your days will be numbered."[15] After this meeting, Rasmy's attorney emailed Doherty about the harassment, but Doherty did not respond.

Frustrated because of Marriott's lack of response to his allegations, Rasmy drove to Marriott's corporate headquarters in Bethesda, Maryland in January 2016 and spoke to Keith Wallace ("Wallace"), Senior Director of Global Investigations. Rasmy told Wallace that employees were stealing money from the company, and that his internal complaints about the theft led to discriminatory retaliation and unlawful religious and racial harassment. In response, Wallace told Rasmy to "[t]ake it to Hassinger."[16] When Rasmy told Wallace he had already spoken to Hassinger, Wallace replied, "I don't know, it's not my department."[17] Rasmy explained that he had been cursed at, racially insulted, and discriminated against, to which Wallace responded, "I am here only to investigate the money issue. This other issue you need to take it to Peggy Hassinger."[18] Rasmy again stated he had already done so, and Wallace told him, "[w]ell, there's nothing I can do."[19] Defendants disclosed in their Rule 56.1

---

[15] App'x 361, 367.

[16] App'x 377.

[17] Id.

[18] App'x 378.

[19] Id.

statement that Wallace eventually went to Essex House to investigate the wage theft, but did not state whether he investigated the allegations of discrimination.

Rasmy stated in his sworn declaration in opposition to Defendants' motion for summary judgment that, as a result of his reporting to Marriott the discrimination and use of slurs by Efstratiou, Mehrani, and Pongpanta, the harassment he experienced at work "escalated."[20] In consequence, Rasmy claims, he became "chronically nervous," would "cr[y] regularly," and began to see a psychiatrist who prescribed him anti-anxiety medication.[21]

On May 9, 2016, Rasmy and Pongpanta were working at an event in the restaurant at Essex House. A dispute arose between Rasmy and Pongpanta in the hallway between the restaurant and the kitchen. While Rasmy alleges there was a video camera in that hallway, Defendants asserted in their Rule 56.1 statement that "[t]here are no surveillance cameras pointing into the hallway" and that "no video footage of the altercation exists."[22]  Rasmy alleges that Pongpanta insulted him and spat in his face, and told him "[y]ou smell" and "[y]ou stink."[23] Pongpanta then told Rasmy "you got no … witnesses," and that he would "get my gun" and "finish you

---

[20] App'x 288.

[21] App'x 287-88.

[22] App'x 303.

[23] App'x 64.

tonight."[24] While investigating the incident immediately afterwards, Marriott security officers saw liquid on Rasmy's face, which Rasmy alleged was Pongpanta's saliva. After this incident, Doherty recommended Rasmy's termination, and he was fired by Marriott shortly thereafter on May 24, 2016.

## II. Procedural History

Rasmy filed this suit against Marriott *pro se* on June 22, 2016, in the Southern District of New York. He challenged his termination as discriminatory and retaliatory, and alleged that he had been subjected to a hostile work environment on the basis of his race, religion, and national origin. Marriott moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). On January 26, 2017, Rasmy, now represented by counsel, moved to amend his complaint to add the individual defendants and new claims under Section 1981.

On February 24, 2017, the District Court dismissed Rasmy's hostile work environment claims under New York State and New York City law as stated in his initial complaint for lack of subject matter jurisdiction, but otherwise denied Marriott's motion to dismiss. After Rasmy filed his First Amended Complaint on May 9, 2017, Defendants moved for summary judgment on October 25, 2017. On September 28, 2018, the District Court granted Defendants' summary judgment motion as to Rasmy's Title VII and Section 1981 claims, declined to exercise supplemental jurisdiction over the remaining

---

[24] App'x 72, 355.

NYSHRL and NYCHRL claims, and dismissed them without prejudice.

This timely appeal followed.

## DISCUSSION

We review *de novo* a district court's grant or denial of summary judgment on claims brought under Title VII and Section 1981.[25] In evaluating such motions, the district court must resolve any doubts and ambiguities and draw all reasonable inferences in favor of the nonmoving party.[26] "In determining whether the moving party is entitled to judgment as a matter of law, or whether instead there is sufficient evidence in the opposing party's favor to create a genuine issue of material fact to be tried, the district court may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record."[27]

Rasmy primarily makes two points in challenging the District Court's decision granting Defendants' motion for summary judgment as to Rasmy's claims alleging a discriminatory hostile work environment. First, he argues that the District Court disregarded all incidents of harassment that were not expressly discriminatory or

---

[25] *See, e.g. Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010).

[26] *See id.* at 545.

[27] *Id.* (internal citation and quotation marks omitted) (noting that "[t]his is especially so in considering claims of hostile work environment").

12

directed at Rasmy. Second, Rasmy objects to the District Court's conclusion that pervasive and highly offensive harassment could not have altered the conditions of Rasmy's employment because he had not been physically threatened and his work performance had not suffered.  With respect to each of these arguments, Rasmy contends that the District Court improperly engaged in fact finding and resolved disputed issues of fact by drawing inferences against Rasmy. Regarding his claim of discriminatory retaliation, Rasmy argues that he established a *prima facie* case for retaliation, and a jury could reasonably find that he was terminated from his position in retaliation for complaining about the hostile work environment. We agree on each of these points.

## I.    Rasmy's Hostile Work Environment Claim

An employer violates Title VII when the "workplace is permeated with discriminatory intimidation, ridicule, and insult … that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment … so long as there is a basis for imputing the conduct that created the hostile environment to the employer."[28] To analyze whether a plaintiff meets this burden, a district court considers "the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with

---

[28] *Kaytor*, 609 F.3d at 546 (emphasis omitted) (citation and internal quotation marks omitted).

the victim's [job] performance."[29] This test has both "objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."[30]

The District Court held, with respect to Rasmy's hostile work environment claims, that "[w]hile discriminatory behavior not directed at the plaintiff can still contribute to the creation of an overall hostile work environment, general anti-religion statements of this nature *not directed at the plaintiff personally* are stray remarks at best." (emphasis added) (internal quotation marks omitted).[31] It concluded that there were "no facts in the record to support the inference that plaintiff was personally targeted by anti-Christian animus, nor that he experienced anything more than a petty slight in his work environment regarding his religious practice."[32]

## A

Rasmy contends that the District Court erred by disregarding all incidents of harassment that were not expressly discriminatory or not

---

[29] *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (alteration in original).

[30] *Id.* (citation and internal quotation mark omitted).

[31] Sp. App'x 21-22 (emphasis added) (citation and internal quotation marks omitted).

[32] Sp. App'x 22.

directed at Rasmy.[33] Specifically, Rasmy maintains that the District Court refused to consider conduct not expressly based on race, religion, or national origin. Hence, Rasmy argues that it was error for the District Court to conclude as a matter of law that certain Defendants calling Rasmy a "rat" or allegedly filing false workplace complaints against him did not constitute discriminatory actions. We agree.

Our case law is clear that when the same individuals engage in some harassment that is explicitly discriminatory and some that is not,

---

[33] The EEOC, in an amicus brief in support of Rasmy and in favor of reversal, noted this point. The EEOC may participate as amicus curiae in a case that "raises novel or important issues of law under Title VII …" *See* EEOC Amicus Curiae Program https://www.eeoc.gov/eeoc/litigation/amicus.cfm. Here, the EEOC has chosen to participate, taking the position that the District Court "significantly misconstrued and misapplied Title VII's protections against discriminatory hostile work environments." EEOC Br. at 1. Although we are not bound by the EEOC's interpretations of Title VII, we accord respectful consideration to the Commission's views. *See Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 53 (2d Cir. 2012) ("The EEOC's Enforcement Guidance [interpreting Title VII] is entitled to deference to the extent it has the power to persuade."); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("We consider that the rulings, interpretations and opinions of [administrative agencies], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

the entire course of conduct is relevant to a hostile work environment claim.[34]

Moreover, on *de novo* review of the record, we note disputed issues of material fact as to whether a rational jury could infer discrimination from the fact that Efstratiou, Tehrani, and Pongpanta also allegedly called Rasmy several names explicitly related to his religion or national origin, including "[t]he mummy," "camel," "Egyptian rat," and "pretentious Christian."[35]

On similar grounds, Rasmy challenges the District Court's conclusion that "the unmistakable inference from the timing of the comments after years without incident [is] that [Rasmy's] coworkers were likely motivated by personal animus in response to [Rasmy's] allegations of wage theft more than any discriminatory animus."[36] Here, too, we agree that the District Court inappropriately made

---

[34] *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 118 (2d. Cir 2010) ("A plaintiff may rely on incidents of sex-based abuse to show that other ostensibly sex-neutral conduct was, in fact, sex-based."); *Kaytor*, 609 F.3d at 547-48 ("Circumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that the same individual engaged in multiple acts of harassment, some overtly sexual and some not." (citation and internal quotation marks omitted)).

[35] App'x 93-94, 200-01, 357, 371, 484, 496.

[36] Sp. App'x 24-25.

factual determinations regarding Defendants' motivations, supplanting the role of the jury.[37]

Concerning comments that Rasmy overheard that were not directed at him but allegedly were purposefully made to others in his presence, Rasmy testified at his deposition that Efstratiou "always made sure that [Rasmy] hear[d] comment[s] about religion[], about Egyptian[s], and [about] how superior Greeks are."[38] Rasmy claims that the record reveals numerous other references by Defendants to Rasmy's religion and national origin—which, in his view, were "constant[]."[39] The District Court dismissed these comments as "stray remarks," stating that there were "no facts in the record to support the inference that [Rasmy] was personally targeted by any anti-Christian animus."[40] Our review of the record leads us to conclude that Rasmy's claims raise disputed issues of material fact—as to whether the abusive comments of which Rasmy complained were in fact stray remarks or sufficiently pervasive or chronic conduct constituting consciously discriminatory animus.

---

[37] *See Raniola v. Bratton*, 243 F.3d 610, 623 (2d Cir. 2001) (stating that questions regarding motives for defendant's alleged discriminatory conduct are matters of fact that should be resolved by a jury).

[38] App'x 381.

[39] App'x 287.

[40] Sp. App'x 22.

17

Moreover, the "stray remarks" doctrine is by no means dispositive.[41] In a claim of a hostile work environment, the emphasis is on the hostility of the work environment as a whole, not the motivation of one decisionmaker, and liability is "determined only by looking at all the circumstances."[42] A plaintiff must show merely that discriminatory incidents were "sufficiently continuous and concerted to have altered the conditions of [the employee's] working environment."[43] Accordingly, conduct not directly targeted at or spoken to an individual but purposefully taking place in his presence can nevertheless transform his work environment into a hostile or abusive one,[44] and summary judgment for Defendants on this basis was unwarranted.

In finding that Rasmy's allegations did not constitute "severe" harassment, the District Court relied substantially on *Mathirampuzha*

---

[41] *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115-16 (2d Cir. 2007) ("Where we described remarks as 'stray,' the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular case was not sufficient. We did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category.") *abrogated in part on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167 (2009).

[42] *Harris*, 510 U.S. at 23.

[43] *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation and internal quotation marks omitted).

[44] The EEOC notes in its brief that it has long taken this position. *See* EEOC Br. at 13-14 (citing cases).

*v. Potter*.[45] *Mathirampuzha*, however, is inapposite. In that case, our analysis addressed a disparate-treatment claim, rather than allegations of a hostile work environment. We held that an assault did not constitute an "adverse employment action" for purposes of the third prong of establishing a *prima facie* case in a disparate-treatment case.[46] And even if the assault in *Mathirampuzha* were analyzed for purposes of determining whether a hostile work environment existed, the question presented was whether a "single event, if extraordinarily severe, could alter the conditions of a working environment."[47]

By contrast, here Rasmy has alleged numerous incidents of discriminatory harassment over the course of at least three years, and he claims that despite his repeated complaints to various persons in Marriott management, Marriott failed to respond appropriately.[48] In examining the question of the severity of Defendants' alleged discriminatory conduct and its effect on Rasmy, we consider relevant the total impact on Rasmy of the many alleged episodes of harassment over the course of three years. The District Court's comparison of the facts to those in *Mathirampuzha* created "a rigid 'calculat[ion] and compar[ison]' methodology [that] ignore[d] the proper role of courts

---

[45] 548 F.3d 70 (2d Cir. 2008).

[46] *Id*. at 78-79.

[47] *Id*. at 79 (citation and internal quotation marks omitted).

[48] *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 606 (2d Cir. 2006) (when a plaintiff alleges ongoing harassment, the severity of any one act is not dispositive).

… at the summary judgment stage … [and], if strictly followed, disregards Supreme Court guidance that hostile environment analysis 'is not, and by its nature cannot be, a mathematically precise test.'"[49]

## B

Despite finding that Rasmy had not shown "severe" harassment, the District Court acknowledged that a jury could find "pervasive" harassment that was "offensive" and "degrading." Nevertheless, it determined that the harassment Rasmy claimed was not actionable because there is nothing in the record from which a reasonable jury could conclude that the alleged discrimination altered the conditions of Rasmy's employment. Specifically, the District Court concluded that Rasmy had not alleged that he had been physically threatened or that the claimed harassment, had interfered with his job performance. This analysis, in our view, misreads Title VII. As the EEOC's brief noted, it "ignores the very reason that Title VII prohibits discriminatorily hostile work environments."[50]

Although the presence of physical threats or impact on job performance are relevant to finding a hostile work environment, their

---

[49] *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 746 (2d Cir. 2003) (quoting *Harris*, 510 U.S. at 22).

[50] EEOC Br. at 18; *see also Harris*, 510 U.S. at 22 ("[E]ven without … tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.").

absence is by no means dispositive. Rather, the overall severity and pervasiveness of discriminatory conduct must be considered.[51] By its very nature that determination is bound to raise factual disputes that likely will not be proper for resolution at the summary judgment stage. In this case, there is a reasonable inference that Rasmy participated in a physical altercation as part of a deteriorating job performance caused by the alleged hostile work environment.[52] Moreover, in its calculation of the severity of the discrimination Rasmy claimed, the District Court did not credit Rasmy's sworn statements that the harassment made him "chronically nervous," that he began to "cr[y] regularly," and that he started seeing a psychiatrist who prescribed him anti-anxiety medication, all of which arguably gives rise to a strong inference that Rasmy's workplace conditions had been materially altered.[53] To that extent, Rasmy presented disputed issues of material fact that should be resolved by a jury, not the court.[54]

---

[51] *See Harris*, 510 U.S. at 23 (discussing Title VII's totality of the circumstances inquiry).

[52] *Cf. Harris*, 510 U.S. at 22 ("A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.").

[53] App'x 287-88.

[54] *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004) ("Where reasonable jurors could disagree as to whether alleged incidents of racial insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law.").

## II.     Rasmy's Retaliation Claim

Rasmy also contends that the District Court erred in granting Defendants' motion for summary judgment as to Rasmy's retaliation claim. Specifically, he argues that there are disputed issues of material fact from which a reasonable jury could find that Rasmy was fired for complaining about unlawful discrimination. We agree.

To establish a *prima facie* case of unlawful retaliation, a plaintiff must show "(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action."[55] Rasmy's complaints to Marriott's management regarding the alleged discrimination he was facing on a daily basis and his eventual termination satisfy the first two elements of the *prima facie* case.[56]

With respect to the third element, the District Court concluded that Rasmy could not make out a *prima facie* case because the record does not show that he was terminated for complaining about harassment. To reach that conclusion, the District Court employed a

---

[55] *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

[56] *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) ("To prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII. However, the plaintiff must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." (internal citations and quotation marks omitted)).

22

"but-for" causation standard, which applies at the later stage of the burden shifting-analysis when a plaintiff is attempting to demonstrate that an employer's allegedly neutral reason for an adverse action is a pretext for retaliation.[57] We conclude that Rasmy's retaliation claim raises issues of material fact.

The record indicates that Rasmy had complained about discrimination for years prior to being fired, and that his last formal complaint was made in January 2016, five months before his termination. On the basis of this timeline, the District Court held that "no reasonable juror could find that Marriott would not have terminated Rasmy but for his complaints of discrimination."[58] As noted above, however, the rule of but-for causation is not applicable as to whether Rasmy established a *prima facie* case—it applies when a plaintiff is rebutting an employer's neutral reason for an adverse employment action. As it happens, we have previously held that "five months is not too long to find the causal relationship."[59] Questions regarding the time gap and causal connection of an alleged retaliatory termination may entail special consideration of the size and

---

[57] *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).

[58] Sp. App'x 18.

[59] *Gorzynski*, 596 F.3d at 110; *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (concluding that a "seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote"); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (finding a causal connection between a retaliatory act and an EEOC complaint filed eight months earlier).

complexity of a defendant employer, where termination of employment may involve multiple layers of decisionmakers, as well as the nature of plaintiff's claims. In some such circumstances, a five-month time frame for a decision to fire an employee may not be exceptional.

In sum, we find that there is a triable issue of fact as to whether Rasmy's allegations that his attempts to raise the issue of harassment with higher management at Marriott in January 2016 led to him being fired. Specifically, Rasmy asserts that after he filed his EEOC charge, Doherty was upset, "verbally abused" him, threatened to fire him, and told him to "keep [his] mouth shut" about anything that happened in the hotel "or [his] days will be numbered."[60] Whether Rasmy's firing five months after a complaint of discrimination was caused by his complaints or, as Marriott argues, by his fight with Pongpanta, raises a factual issue that should be decided by a jury. Marriott's claim that Doherty's reaction related to Rasmy's reports of wage theft rather than his complaints of discrimination also poses a factual question that both sides are disputing, and therefore should be presented to a jury.

As our cases hold, the question of what motivated an employer's desire to fire a worker is a quintessential jury function.[61] In the

---

[60] App'x 361, 367, 494.

[61] *See Stern v. Trustees of Columbia Univ. in City of N.Y.*, 131 F.3d 305, 312 (2d Cir. 1997) (noting that, "[i]n assessing the record to determine whether there is such an issue, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is

circumstances presented here, a reasonable jury could find that Marriott's reasons for firing Rasmy were pretextual. Once a plaintiff makes out a *prima facie* case of retaliation under the burden-shifting framework, the defendant may rebut the "presumption of retaliation" by "articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action."[62] If the defendant provides an explanation, the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action."[63] Here, Marriott states that its non-retaliatory reason for firing Rasmy was due to his physical altercation with Pongpanta on May 24, 2016.[64] However, Rasmy argues (and a jury could agree) that this proffered reason is mere pretext, and the decision to terminate his employment was due to his repeated complaining to Marriott about ongoing discrimination.

It bears recalling, that in discrimination cases, plaintiffs rarely produce direct evidence of retaliation. As we observed in *Carlton v. Mystic Transportation, Inc.*:

> [P]roof is seldom available with respect to an employer's mental processes. Instead, plaintiffs in discrimination suits often must

---

sought"); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue.").

[62] *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

[63] *Ya-Chen Chen*, 805 F.3d at 70 (citation omitted).

[64] *See* Appellees' Br. at 19.

25

rely on the cumulative weight of circumstantial evidence, since an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file. Ordinarily, plaintiff's evidence establishing a *prima facie* case and defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial. Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact.[65]

Here, Rasmy has made a *prima facie* case of retaliation based on Doherty's threats for Rasmy "to keep [his] mouth shut" or his "days will be numbered."[66] Marriott claims that Rasmy was fired because of his altercation with Pongpanta, and that both employees were treated equally because Pongpanta was fired as well.[67] There are a host of disputed facts in this regard that render summary judgment inappropriate. Rasmy denies hitting Pongpanta (both Marriott and Pongpanta argue that Rasmy initiated the physical conflict), and based on Rasmy's earlier complaints about Pongpanta, Marriott was aware that Pongpanta had been instigating confrontations with Rasmy

---

[65] 202 F.3d 129, 135 (2d Cir. 2000) (internal citations omitted).

[66] App'x 361, 367.

[67] Pongpanta was later reinstated to his position after a post-termination arbitration proceeding brought through his union. Rasmy never attempted to appeal his firing through arbitration.

repeatedly by making offensive remarks about Rasmy's race, religion, and national origin.

Marriott claims that there were no cameras in the hallway where the fight took place, which Rasmy disputes in his testimony, recalling at his deposition that there were "two cameras in the hallway ceiling pointed at the ground of the hallway … [and that] they were functioning."[68] Whether or not such cameras were in place and functioning are relevant and disputed factual questions that should be decided by a jury. On our review of the record, we think a jury could find in favor of Rasmy on the issue of fact as to whether Marriott was aware of video footage of the altercation, but declined access to it. In sum, we conclude that it was error to grant summary judgment to Defendants on Rasmy's retaliation claim.

## III.    Rasmy's State Law Claims

Because the District Court granted summary judgment disposing of Rasmy's federal claims, it declined to exercise supplemental jurisdiction over Rasmy's remaining retaliation claims brought under the NYSHRL and NYCHRL. We accordingly reinstate these claims insofar as the District Court dismissed them without prejudice due solely to the absence of Rasmy's federal claims.[69]

---

[68] App'x 379.

[69] *See Karibian v. Columbia Univ.*, 14 F.3d 773, 781 (2d Cir. 1994) (vacating dismissal of plaintiff's Title VII claims and reinstating pendent state law claims dismissed for lack of jurisdiction).

## CONCLUSION

To summarize, we hold as follows:

(1) A hostile work environment claim does not require a plaintiff to show that he or she had been physically threatened or that his or her work performance had suffered by reason of such hostile work environment;

(2) Discriminatory conduct not directly targeted at another employee (*e.g.*, discriminatory remarks made in an employee's presence though addressed to another person) can contribute to the creation of an actionable hostile work environment;

(3) Dismissal of Rasmy's retaliation claim by summary judgment was improper because Rasmy presented disputed issues of material fact that should be resolved by a jury.

For the foregoing reasons, we **VACATE** the September 28, 2018 judgment of the District Court and **REMAND** the cause to the District Court for further proceedings consistent with this opinion, including trial as appropriate.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

28