UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEBRIAL RASMY,<br><br>            Plaintiff,<br><br>    -v-<br><br>MARRIOTT INTERNATIONAL, INC., STAMATIS EFSTRATIU, KAREN DOHERTY, MEHRAN TEHRANI, and SEKSON PONGPANTA,<br><br>            Defendants. | 16-cv-4865 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

After a five-day trial, a jury, while finding the other defendants not liable, found defendant Stamatis Efstratiu liable for retaliation under the New York City Human Rights Law and awarded plaintiff Gebrial Rasmy $400,000 in back pay damages. After the verdict was announced, the Court reminded Efstratiu of his right to "make a motion within the rules and addressed to that particular claim of liability." Tr. 698:12-13.[1] Efstratiu indeed moved, under Rules 50(b) and 59(e) of the Federal Rules of Civil Procedure, to reverse the verdict and for judgment as a matter of law. Although the Court might have found Efstratiu not liable if it had been the trier of fact, the Court now finds itself obliged to deny his instant motion because none of Efstratiu's arguments

---

[1] Citations to "Tr." refer to the trial transcript. See ECF Nos. 283-91.

1

were properly preserved under the Federal Rules of Civil Procedure, and because, in any event, his arguments fail on the merits.

I. Factual Background

Plaintiff Gebrial Rasmy brought this action against his former employer Marriott International, Inc. ("Marriott"), his former human resources director, Karen Doherty, and former co-workers Stamatis Efstratiu, Mehran Tehrani, and Sekson Pongpanta.[2] Rasmy contended that, during his time as a banquet server at the JW Marriott Essex House Hotel in Manhattan, he experienced discrimination because of his race, religion, and national origin and suffered retaliation and termination in violation of federal, state, and city law because he complained about that alleged discrimination.

At trial, Rasmy's co-workers denied that any discrimination took place and argued that they and other banquet servers were harassed and bullied by Rasmy, who accused them of over-reporting their hours to earn greater paychecks from Marriott. Doherty, the hotel's human resources director, also denied Rasmy's allegations and insisted that the hotel thoroughly investigated and attempted to address Rasmy's concerns of discrimination and harassment. According to Marriott, the hotel terminated Rasmy because of an

---

[2] In naming the individual defendants, the Court uses the spellings of their names advanced by defense counsel in their post-trial briefing.

altercation that took place on May 9, 2016, with one of his co-workers, defendant Sekson Pongpanta, an incident that also resulted in Pongpanta's termination.

The jury found only Efstratiu liable, and only for the claim of retaliation under the New York City Human Rights Law. The evidence at trial showed that, in early 2013, Rasmy reported to Doherty that Efstratiu "used racial slurs against" Rasmy. Tr. 71:21-72:10. As Rasmy told Doherty, Efstratiu referred to Rasmy -- as frequently as two or three times a week -- as "that effing Egyptian," "[t]hat fucking mummy," and "that fucking Egyptian." Tr. 68:18-23, 69:4-18. Rasmy also told Doherty that Efstratiu and others "called [Rasmy] the non-alcoholic Christian, the pretentious Christian, the fake Christian," Tr. 70:15-18, and that Efstratiu and others also referred to Rasmy as "the camel, that effing camel," or, on one occasion, "the fucking Arab." Tr. 70:18-20. Rasmy also alleged that Estratiu and others sometimes referred to Rasmy as "the sand [n-word]." Tr. 70:21-24.

Doherty made Efstratiu aware of Rasmy's allegations and complaint of discrimination. Tr. 275:17-276:2. After Rasmy's disclosure, Efstratiu rallied others to file a slew of complaints against Rasmy -- 59 complaints in all, over the span of three years. By comparison, Rasmy had received fewer than 10 complaints against him in the preceding 20 years that he worked at the hotel.

3

Marriott fired Rasmy in May 2016. His termination notice detailed the May 9, 2016 incident in which he engaged in an "argument" with a co-worker, defendant Sekson Pongpanta, that "was disruptive to the workplace." ECF No. 294-3 ("DX 71"). The notice continued that "[t]his incident follows a pattern of alleged hostile & aggressive behaviour toward your co-workers." Id.

## II. Legal Background

The New York City Human Rights Law (NYCHRL) "prohibits employers from 'retaliating or discriminating in any manner against any person because such person has . . . opposed any practice'" of discrimination. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013) (quoting N.Y.C. Admin Code § 8-107(7)).[3] The NYCHRL is not "coextensive with its federal and state counterparts." Id. at 108. Rather, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Id. at 109.

The NYCHRL provides that "[t]he retaliation or discrimination complained of . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment . . . provided, however,

---

[3] Here and elsewhere, internal alterations, citations, and quotation marks are omitted unless otherwise indicated.

4

that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin Code § 8-107(7). "Thus, to prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112. "The assessment" of whether a defendant's conduct is "reasonably likely to deter a person from engaging in protected activity" "should be made with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." Id.

"The NYCHRL provides a broader basis for direct individual liability than" state or federal law. Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Because "[t]he NYCHRL makes it unlawful for 'an employer or an employee or agent thereof'" to discriminate, "the NYCHRL provides for individual liability of an employee regardless of ownership or decisionmaking power." Id. Nevertheless, "individual liability . . . is limited to cases where an individual defendant . . . actually participates in the conduct giving rise to the plaintiff's discrimination or retaliation claim." Id.

5

III. Analysis

"Under Rule 50(a)" of the Federal Rules of Civil Procedure, "a party may move for judgment as a matter of law ('JMOL') during trial at any time prior to the submission of the case to the jury." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 286 (2d Cir. 1998).[4] "The Rule requires the party making such a motion to 'specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.'" Id. (quoting Fed. R. Civ. P. 50(a)(2)). "After an unfavorable verdict, Rule 50(b) allows the party to renew its motion." Id. "The posttrial motion is limited to those grounds that were specifically raised in the prior motion for JMOL; the movant is not permitted to add new grounds after trial." Id. "The articulation is necessary . . . so that the responding party may seek to correct any overlooked deficiencies in the proof." Id. "If specificity was lacking, JMOL may [not] be granted by the district court . . . unless that result is required to prevent manifest injustice." Id. at 287.

The Court must deny Efstratiu's motion because it raises arguments that were nowhere present in defendants' earlier Rule 50(a) motion. At the close of Rasmy's case, Efstratiu and the other defendants moved for judgment as a matter of law under Rule 50(a),

---

[4] A party may so move only if the opposing side "has been fully heard on [the] issue during a jury trial." Fed. R. Civ. P. 50(a)(1).

contending that there was "insufficient evidence supporting Plaintiff's claims for discrimination, retaliation, and hostile work environment." ECF No. 277 ("Rule 50(a) Mot."), at 2. But defendants made no arguments whatsoever about the standard for or evidence of retaliation under the NYCHRL, the subject of the instant Rule 50(b) motion.[5] Instead, the portion of the Rule 50(a) motion discussing the retaliation claim mentioned only federal and state law. See id. at 4-5 (discussing elements for "a prima facie case for retaliation under Title VII, 42 U.S.C. § 1981, and NYSHRL [New York State Human Rights Law]"). That omission is critical, because the NYCHRL covers broader ground than the specific claims challenged in the Rule 50(a) motion; indeed, the NYCHRL allows for liability in circumstances even where federal and state causes of action for retaliation do not. See Mihalik, 715 F.3d at 109.

Efstratiu fares no better by seeking, in the alternative, to proceed under Rule 59(e). The Federal Rules of Civil Procedure do not "permit[] a party to obtain judgment as a matter of law under Rule 59(e) after failing to comply with the carefully crafted structure and standards of Rules 50 and 51." ING Glob. v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 96 (2d Cir. 2014).

---

[5] By contrast, defendants did specifically argue in the Rule 50(a) motion that Rasmy's evidence was insufficient to prove discrimination under the NYCHRL. See Rule 50(a) Mot. at 4.

7

No "manifest injustice" ensues from this result. Id. at 97. "Manifest injustice exists where a jury's verdict is wholly without legal support." Id. Here, even if Efstratiu's arguments against liability had been preserved, there was sufficient evidence for the jury's verdict. "When evaluating a motion under Rule 50, courts are required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in its favor from the evidence." Id. "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not required to believe." Id.

Efstratiu concedes that the Court's instructions of law to the jury were correct. See ECF No. 295 ("Mem."), at 3 ("The Court's straightforward 11th instruction to the jury for Plaintiff's NYCHRL claim against Mr. Efstratiu is controlling."). The Court instructed that there are "two differences" between, on the one hand, a retaliation claim under federal and state law, and, on the other, a retaliation claim under the NYCHRL. ECF No. 294-2 ("Jury Instructions"), Instruction No. 11. "First, Mr. Rasmy need only show, by a preponderance of the credible evidence, that his termination was motivated in part by the fact that he had complained of discrimination and/or other abusive conduct based on

8

his race, religion, and/or national origin." Id. "Second, Mr. Rasmy also need only show, by a preponderance of the credible evidence, that the given defendant you are considering took action in response to his complaints that is reasonably likely to deter him from complaining of discriminatory treatment, and not that the given defendant took a materially adverse action against him." Id. The trial record, weighed as it must be in Rasmy's favor, contains enough evidence to support both showings.

Rasmy's termination notice itself provides sufficient evidence from which a jury could infer that Rasmy's complaints of discrimination partially motivated his termination. Although the notice describes the May 9, 2016 altercation between Rasmy and co-worker Pongpanta as the primary reason for Rasmy's termination, it also notes that the "incident follows a pattern of alleged hostile & aggressive behaviour toward your co-workers." DX 71. As both parties acknowledge, the trial evidence showed that Marriott's awareness of such alleged hostile and aggressive behavior came from a slew of grievances lodged against Rasmy in a campaign led by Efstratiu. See Mem. at 6-7; ECF No. 296 ("Opp.") at 13-16. Rasmy argued at trial that those very grievances by Efstratiu and others were the precise actions that constituted retaliation for his protected activity of complaining of discrimination. See Opp. at 13-16. It is not within the purview of the Court to weigh the evidence itself to come to a different conclusion. See ING Glob.,

9

757 F.3d at 97. Given that Rasmy's termination notice referred to information Marriott learned from those grievances, which the jury was entitled to find were responses to Rasmy's protected activity, it was reasonable for the jury to infer that Rasmy's termination "was motivated in part by the fact that he had complained of discrimination." Jury Instructions, Instruction No. 11. Indeed, the trial testimony revealed that Rasmy had made the hotel's human resources director well aware of his complaints of discrimination. See, e.g., Tr. 71:21-72:10. And for liability under the NYCHRL, there is no requirement that Efstratiu himself terminated Rasmy or otherwise himself "took a materially adverse action against" Rasmy. Jury Instructions, Instruction No. 11.

Similarly, the jury was within its ken to infer that the series of grievances against Rasmy were "reasonably likely to deter him from complaining of discriminatory treatment." Id. Efstratiu bears the burden of showing that "a jury could not reasonably conclude from the evidence that such conduct was reasonably likely to deter a person from engaging in protected activity." Mihalik, 715 F.3d at 112 (emphasis added). "This assessment should be made with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." Id. In Mihalik, the Second Circuit held, under the NYCHRL, that a jury could properly find that

"shunning" a plaintiff was reasonably likely to deter her from opposing harassment. Id. at 116. By the same token, this Court cannot conclude as a matter of law that being subjected to repeated, intensifying grievances is not reasonably likely to deter a person from engaging in protected activity.

Efstratiu argues that filing grievances against Rasmy cannot be a basis for his liability for three reasons, none of which avails. First, Efstratiu argues that the grievances were all factually true and otherwise lawfully filed. But, even if so, those facts are beside the point. The jury was entitled to draw the reasonable inference that, given the timing and intensification of the grievances after Rasmy's protected activity, the grievances were filed "in response to [Rasmy's] complaints" of discrimination. Jury Instructions, Instruction No. 11. Efstratiu's efforts to cast doubt on the credibility of Rasmy's principal witness, Lubos Naprstek, are improper at this juncture. In evaluating a Rule 50(b) motion, the Court may not "pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not required to believe." ING Glob., 757 F.3d at 97. Second, Efstratiu points to trial testimony that Rasmy was not aware of most of the grievances at the time they were filed. See Tr. 80:5-14, 81:9-10. It is undisputed, however, that Rasmy was aware of many of the grievances. There was no need

11

for the jury to find that Rasmy knew of all 59 grievances to conclude that what Rasmy did know about was a reasonably likely deterrent of protected activity. Finally, Efstratiu notes that Rasmy "continued to freely complain to Marriott long after the co-worker petitions and letters stopped." Mem. at 10. That is immaterial. Retaliation under the NYCHRL is an objective standard, assessing whether a defendant's conduct would "deter a reasonable person," not whether a given plaintiff was subjectively deterred. Mihalik, 715 F.3d at 116.

Efstratiu contends, in the alternative, that the jury's award of back pay damages against an individual employee defendant must be stricken. Efstratiu waived that argument by agreeing to the verdict form, which allowed the jury to specify a back pay award against each defendant, including Efstratiu. Nor did Efstratiu make any such argument in connection with the jury instructions or in his Rule 50(a) motion. Efstratiu does not even attempt, in his reply submission, to argue that this issue was not waived. See ECF No. 299 ("Reply"), at 6-7. In any event, Efstratiu has not shown that the NYCHRL forbids an award of back pay damages against an individual defendant in these circumstances. Instead, he cites cases under Title VII, which are inapposite. See Mem. at 11-12; Mihalik, 715 F.3d at 109. And he identifies no such restriction of back pay damages in the text of the NYCHRL or any other relevant authority. See Malena, 886 F. Supp. 2d at 366 (explaining that

12

"the NYCHRL provides for individual liability of an employee regardless of ownership or decisionmaking power"). Indeed, "[u]nder the . . . NYCHRL, . . . courts have not limited back pay to those defendants who paid plaintiffs' salaries out of their own pockets." Dodd v. City Univ. of N.Y., 541 F. Supp. 3d 318, 321-22 (S.D.N.Y. 2021). "Rather, courts often impose" back pay damages against "both the plaintiff's actual employer and the individual employees found to have acted against her." Id. at 322; see id. at 321-22 (holding that, under the NYCHRL, the jury may award back pay damages against individual employee defendants even where the employer enjoys sovereign immunity).

Finally, Efstratiu argues that even if backpay may be awarded, "the amount should be capped as of the date when [Rasmy] became disabled and unable to work." Mem. at 13. The Court already rejected this argument twice -- first when defendants made it in a motion in limine and again when defendants requested an instruction that the jury "must reduce the award of damages or cap the damages award by the date that the plaintiff was unable to work." Tr. 595:16-18; see Tr. 4:7-12 (denying defendants' motion in limine to exclude "evidence concerning plaintiff's back pay . . . because he became permanently disabled months after his employment was terminated"). Ordinarily, back pay would not be appropriate for periods after a plaintiff became unable to work "due to an intervening disability" after termination. Thornley v.

13

Penton Publ., 104 F.3d 26, 31 (2d Cir. 1997). But here, Rasmy argued that his termination was a but-for cause of the disability. "The evidence adduced at trial showed that [Rasmy] was injured due to the physical demands of his job as a janitor." Opp. at 23; see, e.g., Tr. 131:13-132:10. And "but for his termination from the Essex House, [Rasmy] would not have worked as a janitor at the Surrey Hotel." Opp. at 23; see Tr. 129:22-130:20. Because back pay "is intended to compensate a plaintiff . . . for losses suffered as a result of defendant's discrimination" or retaliation, the jury was entitled to credit Rasmy's argument that his back pay award should include the period after he became disabled. Thornley, 104 F.3d at 31.

IV. Conclusion

The Court denies defendant Efstratiu's post-trial motion for judgment as a matter of law. The Clerk is respectfully directed to close documents 277, 293, and 298 on the docket of this case. In addition, the Clerk is respectfully directed to close documents 168, 173, 218, 221, 235, 238, 246, and 260 because those motions have already been resolved at trial or are moot.

SO ORDERED.

New York, NY
February 5, 2024

JED S. RAKOFF, U.S.D.J