```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| GEBRIAL RASMY,<br><br>          Plaintiff,<br><br>     -v-<br><br>MARRIOTT INTERNATIONAL, INC., STAMATIS EFSTRATIU, KAREN DOHERTY, MEHRAN TEHRANI, and SEKSON PONGPANTA,<br><br>          Defendants. | 16-cv-4865 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

After a five-day trial, a jury, while finding the other defendants not liable, found defendant Stamatis Efstratiu liable for retaliation under the New York City Human Rights Law and awarded plaintiff Gebrial Rasmy $400,000 in back pay damages.[1] The path to trial was anything but smooth. Over the course of more than two years, Rasmy fired six different sets of lawyers -- many of whom had been known to the Court as highly experienced, capable counsel -- because of a slew of purported "strategic differences" with every single one of them. As relevant here, on the eve of what had for months been a firm trial date, Rasmy fired his sixth set of counsel, virtually forcing the Court's hand to accommodate

---

[1] Rasmy had brought claims against five defendants, including Efstratiu, for discrimination and retaliation under federal, state, and city law.

1

an adjournment of the trial. Because that adjournment came after a three-week spree of trial preparation in reliance on the then-firm trial date, defendants moved for the Court to award them attorneys' fees under its inherent power for work performed during that period. The Court hereby grants the motion, awarding defendants $79,832.10 in attorneys' fees and expenses for that three-week period and for work on the instant motion.

I. Factual Background

Plaintiff Gebrial Rasmy brought this action against his former employer Marriott International, Inc., his former human resources director Karen Doherty, and former co-workers Stamatis Efstratiu, Mehran Tehrani, and Sekson Pongpanta.[2] Rasmy contended that, during his time as a banquet server at the JW Marriott Essex House Hotel in Manhattan, he experienced discrimination because of his race, religion, and national origin and suffered retaliation and termination in violation of federal, state, and city law because he complained about that alleged discrimination.

The journey to trial was long and circuitous. This case began before then-District Judge Alison Nathan, who granted summary judgment for defendants on all claims on September 28, 2018. ECF No. 95. On May 20, 2020, the Second Circuit vacated the summary

---

[2] In naming the individual defendants, the Court uses the spellings of their names advanced by defense counsel in their post-trial briefing.

judgment order and remanded for trial. ECF No. 99. Following Judge Nathan's appointment to the Second Circuit and after substantial motions practice and delays because of the COVID-19 pandemic, the case was reassigned to the undersigned on March 25, 2022. The Court set a trial date of October 17, 2022, and all was quiet on the docket for months. On October 10, 2022, at 11:29 p.m., however, Rasmy sent the Court a letter stating that he had terminated his lawyer -- who was then his sixth set of counsel in this case. See ECF No. 262, at 2-3. And on October 11, 2022, new counsel entered an appearance for Rasmy. ECF No. 261.

On October 13, 2022, the Court held a hearing in response to Rasmy's letter, at which it recounted, as follows, Rasmy's saga of cycling through his lawyers:

> So this matter has been set for trial beginning October 17. Today, of course, is October 13.
> Now, I previously received a letter from Mr. Rasmy that was -- took the form of an email sent on October 10 at 11:29 p.m. stating -- it's a long letter, and he goes into a lot of detail. But the first sentence is "I have terminated my relationship with Mr. Diederich for the following reason," and he then goes into the reason.
> Now, before this case was reassigned to me, he was represented initially by Zackary Holzberg and Alexander Cabeceiras, and he terminated them back on June 4 of 2020.

3

>Then he was represented by Lauren Goldberg and Stephen Bergstein, and while there's some dispute as to whether he fired them or they voluntarily withdrew, they nevertheless were terminated on September 14, 2020.
>
>Then he was represented by Ty Hyderally, and he terminated Mr. Hyderally on November 4, 2020, because of strategic differences.
>
>Then he was represented by Ambrose Wotorson, Jr., who he terminated on August 20, 2021, saying that he terminated Mr. Wotorson again because of strategic differences.
>
>Then he was represented by Richard Cardinale and Jason Solotaroff, and he terminated them on November 23, 2021, because he says that they withdrew because of disagreements on his approach to trial.
>
>Although his current counsel has not yet been relieved by the Court, nevertheless, the two attorneys here from Walden Macht & Haran filed a purported notice of appearance on his behalf on October 11, and a notice of appearance was also filed on his behalf by Ms. Paul.

ECF No. 262, at 2-3.

Rasmy's new counsel stated that they would be ready to proceed to trial on October 17 if the Court "insist[ed]," but asked for a short adjournment to facilitate trial preparation. Id. at 3. Assessing the situation candidly, the Court told Rasmy's new

4

counsel, "If I give you an adjournment, statistically the chances are that Mr. Rasmy is going to fire you before the new trial date and bring in someone else, at least that's his modus operandi as shown repeatedly throughout this case." Id. Rasmy then represented to the Court that it was his "sworn word" that he would not fire his new counsel from Walden Macht. Id. at 5. Because the Court recognized that it "would [not] be truly fair to Mr. Rasmy to start trial" on October 17, the Court adjourned the trial until March 20, 2023, when it indeed began. Id. at 8; see Minute Entry of 3/20/2023. The Court further recognized at the October 13 hearing that Rasmy's "behavior . . . has imposed burdens on defense counsel, and they may call for economic recovery." ECF No. 262, at 10. The Court thus noted that if defendants filed "a request for sanctions," the Court would consider the request "very seriously given this history." Id. at 11.

On December 8, 2022, defendants moved under the Court's inherent power for an award of attorneys' fees covering the three-week period before the previous trial date of October 17. ECF No. 266 ("Mem."). No briefing schedule was then set, but in resolving defendant Efstratiu's post-trial motion for judgment as a matter of law, the Court set a schedule for a response and reply.[3] In

---

[3] On February 5, 2024, the Court denied Efstratiu's motion for judgment as a matter of law because his arguments were not properly preserved under Federal Rule of Civil Procedure 50 and he failed

5

compliance with that schedule, Rasmy filed an opposition on February 18, 2024, ECF No. 301 ("Opp."), and defendants filed a reply on February 26, 2024, ECF No. 303 ("Reply").

II. Analysis

The Court's "inherent power" permits it to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).[4] "Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986). As relevant here, "a party shows bad faith by delaying or disrupting the litigation." Chambers, 501 U.S. at 46. "A finding of bad faith in this context requires a district court to determine both that challenged conduct was without a colorable basis and that it was pursued in bad faith, i.e., motivated by improper purposes such as harassment or delay." Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 282 (2d Cir. 2021).

The Court concludes that Rasmy's conduct satisfies this exacting standard. In particular, Rasmy repeatedly fired his experienced, capable lawyers for concocted "strategic

---

to show that the jury's verdict of liability under the New York City Human Rights Law was a manifest injustice. ECF No. 300.

[4] Here and elsewhere, internal alterations, citations, and quotation marks are omitted unless otherwise indicated.

6

differences." The Court's own bird's-eye view of the litigation made plain that Rasmy was not some mastermind of strategy who was somehow able to discern weaknesses in his case that his competent counsel -- the last of whom to be fired by Rasmy was the co-chair of the New York State Bar Association's Committee on Civil Rights -- could not. Rather, Rasmy had no regard for the meaningful work, time, and resources that his own counsel and defense counsel were diligently expending on this case. Indeed, had the Court not required Rasmy to provide his "sworn word" that he would cooperate with his seventh set of attorneys, the Court has little confidence that Rasmy would not have terminated them, too.

Rasmy's eleventh-hour firing of his sixth set of counsel, on the heels of three weeks of final witness preparations, filing of motions in limine and proposed jury instructions, and readying of exhibits for what had for months been a firm trial date, had no colorable basis other than to delay the trial. Accordingly, the Court finds that, under its inherent power, an award of attorneys' fees and expenses from Rasmy to defense counsel is warranted for that three-week period and for the work done on the instant motion to recover those fees and expenses.[5] See Enmon v. Prospect Cap.

---

[5] Although Federal Rule of Civil Procedure 11 allows a court to award attorneys' fees against a party, it does not apply to the circumstances here of a party delaying a trial by firing his lawyer at the last minute. And while 28 U.S.C. § 1927 allows for fees and expenses against "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so

Corp., 675 F.3d 138, 148 (2d Cir. 2012) (affirming district court's decision to award fees for litigating "the sanctions motion itself").

Having carefully reviewed defendants' requested fees and expenses, the Court further finds that the figures are reasonable and that defendants are entitled to the full amount of $79,832.10 that they seek. During the three-week period that is the subject of this motion, defense counsel performed multiple witness preparation sessions and other work that all had to be redone six months later, when the trial eventually took place. Moreover, defendants seek fees only for the work of two partners, who charged eminently reasonable hourly rates of $350 and $390, respectively. See ECF No. 267, ¶ 6. The hours spent -- a total of 174.4 hours over a three-week period for trial preparation and 25 hours litigating this motion -- are similarly reasonable and supported by sufficiently detailed, logical billing entries. See id.; ECF Nos. 303-1, 303-2, 303-3.

---

multiplies the proceedings in any case unreasonably and vexatiously," it applies only to bad-faith conduct of attorneys, not litigants themselves. See Oliveri, 803 F.2d at 1273. The authority to award fees and expenses here thus comes from the Court's inherent power. See Chambers, 501 U.S. at 50 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

III. <u>Conclusion</u>

The Court grants defendants' motion for attorneys' fees and expenses in the amount of $79,832.10. The Clerk is respectfully directed to lift the stay on the docket of this case, close documents 265 and 272, enter final judgment consistent with the jury's verdict and this Memorandum Order, and close this case.

SO ORDERED.

New York, NY
April 18, 2024

_____
JED S. RAKOFF, U.S.D.J