UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEBRIAL RASMY,<br><br>Plaintiff,<br><br>-v-<br><br>MARRIOTT INTERNATIONAL, INC., et al.<br><br>Defendants. | 16-cv-4865 (JSR) |
| MICHAEL DIEDERICH, JR.,<br><br>Plaintiff,<br><br>-v-<br><br>FORD HARRISON LLP, et al.,<br><br>Defendants. | 26-cv-2132 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

For a period of around eight months in 2022, Michael Diederich ("Diederich") represented Gebrial Rasmy ("Rasmy") in an employment discrimination lawsuit against Rasmy's former employer, Marriott International, Inc. ("Marriott"). See Rasmy v. Marriott, No. 16-cv-5865 (the "Employment Discrimination Action"). Disputes over Diederich's compensation, however, persist. In February of this year, while Diederich's motion for a charging lien in the Employment Discrimination Action was pending, Diederich filed a new lawsuit against Rasmy and several other attorneys involved in the Marriott litigation alleging, inter alia, that the parties had conspired to deprive Diederich of his fee, and seeking compensation from Rasmy on various grounds. See Diederich v. Ford Harrison LLP, No. 26-cv-2132

(the "Fee Action"). The Court thereafter consolidated the two actions to address the overlapping issues of the charging lien and Diederich's new allegations in the Fee Action.

On June 15, 2026, the Court granted by bottom-line order the motions of the attorney defendants to dismiss the Fee Action. See ECF No. 36, No. 26-cv-2132. Briefing on Rasmy's motion to dismiss the Fee Action is now complete, as is briefing on Diederich's motion for a charging lien in the Employment Discrimination Action. The Court now takes up these outstanding motions and also sets forth the reasons for its June 15, 2026, bottom-line order granting the attorney defendants' motions to dismiss.

After careful consideration, the Court grants Diederich's motion for a charging lien in the amount of $70,000 to compensate Diederich for the "fair and reasonable value" of the services rendered to Rasmy in the Employment Discrimination Action. Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004). To the extent the Fee Action seeks additional recovery from Rasmy, it must be dismissed. Moreover, the additional claims in the Fee Action also must be dismissed because the allegations in the complaint are either conclusory or are based on a fundamental misapprehension of the prior proceedings in the Employment Discrimination Action. Accordingly, the Fee Action is dismissed in its entirety.

## I. Background

The genesis of the parties' current dispute lies in an employment discrimination lawsuit Rasmy filed in June 2016 against Marriott and several Marriott employees, alleging that he was discriminated against based on his race, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964, 18 U.S.C. § 1981, New York State Executive Law, and the New York City Administrative Code.

Over the next eight years, Rasmy retained (and discharged) numerous attorneys, one of whom was Michael Diederich. Marriott and its employees were at all times (and still are) represented by attorneys from Ford Harrison LLP (the "Marriot Attorneys"). Diederich represented Rasmy between February and October 2022. On October 10, 2022, one week before Rasmy's trial was set to begin, Rasmy sent a letter to the Court indicating that he had discharged Diederich. The Court allowed Rasmy to proceed with substitute counsel Walden Macht & Haran LLP. After trial, however, the Court awarded defendants $79,832.10 in attorneys' fees and expenses for the additional trial preparation work incurred as a result of the last-minute adjournment necessitated by Rasmy's change of counsel.

In March 2023, the case went to trial. After trial, the jury found most defendants (including Marriott) not liable, but awarded Rasmy $400,000 on his successful retaliation claim against his former supervisor, Stamatis Efstratiu ("Efstratiu"). Rasmy and Efstratiu cross-appealed the jury verdict. Rasmy also appealed the Court's attorneys' fees award. While the case was on appeal, the parties

negotiated and entered into a settlement agreement. As a result, the parties withdrew their appeal and filed a stipulation of dismissal in this Court. Although Diederich did not represent Rasmy during the settlement negotiations, he was a party to the settlement agreement insofar as it provided for certain funds to be put in escrow to satisfy his claimed fee and discharged Marriott from any fee-related claims by Diederich and Rasmy's other attorneys.

After the parties settled, Diederich (who had taken the case on a contingency fee basis) filed a motion for a charging lien under New York Judiciary Law § 475 seeking compensation for his legal services. Diederich submitted an itemization of time reflecting a total bill of $122,185 but agreed to cap his fee request at $100,000. Along with his motion, Diederich filed a copy of the parties' settlement agreement under seal. At that point, Rasmy was represented by a new attorney, Andrea Moss, and her firm, Moss & Byrnes (the "Moss Attorneys").

On October 31, 2024, the Court granted Diederich a charging lien in the amount of $100,000. See ECF No. 333, No. 16-cv-4865. The Court concluded that Rasmy had discharged Diederich without cause and that Diederich was therefore entitled to the "fair and reasonable value" of his services. Universal Acupuncture, 370 F.3d at 263. The Court reasoned that Rasmy's retainer agreement with Diederich provided for a 30 percent contingency fee and that the $100,000 lien requested was less than 30 percent of Rasmy's $400,000 trial recovery.

Rasmy appealed the Court's decision. On December 19, 2024, the Court granted a stay of enforcement of the charging lien pending appeal

on the condition that Rasmy deposit $100,000 to be held in an interest-bearing account by the Clerk of Court. See ECF No. 336, No. 16-cv-4865. Rasmy did so.

On December 11, 2025, the Second Circuit reversed and remanded the Court's charging lien order. See Rasmy v. Diederich, No. 24-3117, 2025 WL 3552719 (2d Cir. Dec. 11, 2025). It did not disturb the Court's conclusion that Diederich had been discharged without cause and was therefore entitled to the fair and reasonable value of the services rendered, but it faulted the Court for failing to consider the Smith factors in determining what that compensation should be. Id. at *4-*5. In particular, the Second Circuit observed that the Court had not considered Rasmy's contention that "the hours spent on various tasks by Diederich were excessive." Id. at *4.

After the case was remanded to this Court, Diederich renewed his motion for a charging lien. See ECF No. 340, No. 16-cv-4865. Among other things, Diederich renewed his argument that Rasmy's ultimate settlement agreement with Marriott should bear on the amount of his fee award. He attached a copy of the agreement to his motion as an exhibit. Unlike when he filed his prior motion for a charging lien, however, Diederich did not file the settlement agreement under seal.

On February 13, 2026, the Marriott Attorneys and the Moss Attorneys convened a joint telephone conference with Diederich and the Court in which they expressed concern at the public filing of the settlement agreement and argued that it was a confidential document

that should have been filed under seal. To address the parties' dispute, the Court set an in-court conference for February 19, 2026.

In the interim, on February 17, 2026, Diederich filed a new lawsuit in New York state court (the "Fee Action"), naming as defendants the Marriott Attorneys, the Moss Attorneys (collectively, the "Attorney Defendants"), and Rasmy. The Fee Action sought recovery from Rasmy for his unpaid fees and also brought a variety of state and federal law claims against the Attorney Defendants in connection with their alleged misconduct in negotiating the original settlement agreement and in seeking the sealing of settlement-related information. Again, Diederich attached an unredacted, unsealed copy of the settlement agreement to his complaint.

After hearing from the parties at the February 19, 2026, conference, the Court ordered the Clerk of Court to seal the documents Diederich had submitted that contained confidential settlement-related information and directed Diederich to re-file redacted versions of those documents on the public docket. See ECF No. 344, No. 16-cv-4865. At the conference, the Court attempted to correct Diederich's apparent misimpression that sealed documents would not be visible to or considered by the Court. See Tr. 4:20-24, ECF No. 349, No. 16-cv-4865 ("[Y]ou seem to be under the misimpression that something filed under seal would not be something that I could see. That's not true; I see everything."), see also Tr. 5:20-24, 6:21-7:22 (similar); Tr. 9:20-21 ("I will look at everything. I will make findings on everything.").

On March 16, 2026, the Marriott Attorneys removed the Fee Action to federal court, and the Court accepted it as related to the underlying charging lien dispute.[1] The Court thereafter set a briefing schedule on the Attorney Defendants' motions to dismiss the Fee Action. See ECF No. 17, No. 26-cv-2132.

Rasmy, who was not served until after the Attorney Defendants, filed a pro se motion to dismiss on May 28, 2026. See ECF Nos. 35, 39, No. 26-cv-2132. At that point, the Court set a briefing schedule on his motion and also consolidated the Fee Action with the underlying Employment Discrimination Action for the limited purpose of resolving the outstanding charging lien motion and the motions to dismiss. See ECF No. 35, No. 26-cv-2132.

On June 15, 2026, the Court granted by bottom-line order the Attorney Defendants' motions to dismiss the Fee Action. See ECF No. 36, No. 26-cv-2132. The Court now takes up the outstanding charging lien motion and Rasmy's motion to dismiss and sets forth its reasons for its earlier order granting the Attorney Defendants' motions to dismiss.

[1] In accordance with its earlier sealing order in the Employment Discrimination Action, the Court directed the defendants to redact any references in the complaint to confidential settlement information and to file an unredacted version of the complaint under seal. See ECF No. 9, No. 26-cv-2132.

## II. Discussion

### A. Charging Lien (Employment Discrimination Action)

Under New York law, a lawyer who is discharged without cause may exercise a lien over a former client's cause of action, award, or settlement. Specifically, New York Judiciary Law § 475 provides:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon . . . [any] award, settlement, judgment or final order in his or her client's favor. . . . The court upon petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. Law. § 475. Under that provision, if an attorney is discharged without cause, "the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered[,] whether that be more or less than the amount provided in the contract or retainer agreement[.]" Rasmy, 2025 WL 3552719, at *4 (quoting Smith v. Boscov's Dep't Store, 596 N.Y.S.2d 575, 576 (1993)). "Recovery on a quantum meruit basis is called for even where the attorney discharged without fault was employed under a contingent fee contract." Id. (quoting Universal Acupuncture, 370 F.3d at 263).

Factors relevant to determining the "fair and reasonable value" of an attorney's services include "the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and [the] amounts customarily charged for similar services." Id. (quoting Smith, 596 N.Y.S.2d at 576); see also Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998). Although a court may also take into account the percentage fee set forth in a retainer

agreement, an agreed-to contingency fee is not dispositive and must instead "be analyzed in the context of the other factors" just listed. Rasmy, 2025 WL 3552719, at *4. Ultimately, because a charging lien is an equitable remedy, "the overriding criterion for determining the amount of [the] charging lien is that it be 'fair.'" Sutton v. New York City Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006) (quoting Cohen v. Grainger, Tesoriero & Bell, 602 N.Y.S.2d 788, 790 (1993)).

Diederich argues that the Smith factors entitle him to a charging lien in the amount of $100,000. Rasmy argues that any award should be nominal because Diederich's contribution was minimal, much of his work was duplicative, and he failed to keep contemporaneous time records.

After considering the parties' arguments and the factors outlined in Smith, the Court concludes that Diederich is entitled to a charging lien in the amount of $70,000.

Starting with "the amount of money involved" and the "results achieved," Diederich makes much of the amount that Rasmy and Marriott ultimately settled for, but Diederich was not involved in those negotiations and cannot claim responsibility for the results achieved. In fact, Diederich advised Rasmy that he would "very likely lose at trial" and "implored" him to settle for an amount significantly less than both the trial award and the later settlement. See Mem. of Law in Support of Upholding Attorney Diederich's Charging Lien ("Lien Mtn.") at 6, ECF No. 346, No. 16-cv-4865. Had Rasmy settled for the amount that Diederich urged him to, Diederich's contingency fee would have been $83,333, less than the amount he now seeks in a charging

lien. Thus, to the extent the Court considers the percentage fee in the retainer agreement as a relevant factor, it weighs heavily in favor of capping Diederich's award at no more than $83,333, notwithstanding the ultimate settlement agreement negotiated by Rasmy's subsequent counsel. See, e.g., Sutton, 462 F.3d at 161 (vacating a charging lien that would have netted a client's former law firm more than the settlement it urged the client to accept).

Moreover, Diederich's overall contribution to moving Rasmy's case forward was modest.[2] Discovery had already concluded when Diederich commenced representation and summary judgment motions had already been briefed and appealed. See Lien Mtn. at 3; Mem. of Law in Opp. to Attorney Diederich's App. for Enforcement of Charging Lien ("Lien Opp.") at 7, ECF No. 347, No. 16-cv-4865. Having been discharged by Rasmy, Diederich played no role at trial and no role in briefing post-trial motions, appealing the verdict, or negotiating a final resolution to the case. See Lien Opp. at 7. For that matter, as noted above, Diederich played no role in negotiating the settlement agreement

[2] The total of Diederich's contribution to Rasmy's case reflected on the docket consists of (i) several short letter motions and status reports concerning procedural matters, ECF Nos. 224, 229-31, 233; (ii) a two-paged opposition to a motion for sanctions, ECF Nos. 225-26; (iii) a very brief opposition to defendants' motions in limine, ECF Nos. 241-42; (iv) a three-paged Rule 26 disclosure, ECF No. 244; (v) a four-paged supplemental motion in limine, ECF No. 246; (vi) proposed jury instructions and voir dire questions, ECF Nos. 254-56; and (vii) a joint pretrial consent order, ECF No. 259. Diederich also defended a 5.5-hour supplementary deposition of his client, exchanged emails about several outstanding discovery disputes, and prepared for trial. None of Diederich's filings were more than a few pages long and none dealt with issues of particular complexity or significance.

that he insists should be the yardstick against which his compensation is measured. Any increase in Rasmy's recovery beyond the settlement offer Diederich urged him to accept -- not to mention the jury verdict obtained by substitute counsel at trial -- plainly was not attributable to Diederich's efforts or the result of any contribution Diederich made to the case.

As for the "time spent" and the "amounts customarily charged for similar services," upon reviewing Diederich's time entries and considering Rasmy's objections to Diederich's time-keeping methods, the Court agrees with Rasmy that the total compensation asserted in Diederich's motion is excessive. Diederich asserts that he expended over 488 hours of attorney time on the case, a number that is hardly "reasonable" in light of Diederich's fairly limited contributions to the case described above. See Sequa Corp., 156 F.3d at 148; Lien Mtn. at 15. Diederich, moreover, acknowledges that he did not consistently record time spent on Rasmy's case contemporaneously, and that many of his time entries are based on estimates and later reconstructions of his time. See Lien Mtn. at 4-5, 15; cf. New York State Ass'n for Retarded Children v. Carey, 711 F.3d 1136, 1147-58 (2d Cir. 1983) (fee applications generally must be documented by contemporaneous, detailed time records and failure to do so warrants a denial or substantial reduction in the amount requested). Additionally, many of Diederich's time entries are block-billed and appear to include time spent on the case both before Diederich was retained and after he was discharged.

Finally, Diederich makes only a cursory attempt to justify his claimed $500 hourly rate.

Ultimately, Diederich contributed a modest amount to a legally uncomplicated employment discrimination case, a consideration that weighs against the sizable award that he seeks. On the other hand, the Court appreciates that Diederich took the case on a contingency fee basis and that doing so always represents a risk for the attorney involved, made even more risky by Rasmy's repeated discharge of prior attorneys. And Diederich, despite his negative view of Rasmy's case, was prepared to take the case to trial until, at the last minute, he was discharged by Rasmy. Therefore, despite the difficulty of ascertaining precisely the value to Rasmy of the legal services rendered, the Court concludes that Diederich is entitled to some meaningful measure of compensation for his time spent working on Rasmy's case. Taking into consideration all the factors just discussed, the Court concludes that an award of $70,000 is both "fair" and "reasonable." Cohen, 602 N.Y.S.2d at 790. Accordingly, the Court grants Diederich's motion for a charging lien in the amount of $70,000.

**B. Motion to Dismiss (Fee Action)**

Each of the defendants to the Fee Action has moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6). On a motion to dismiss, the Court takes "all 'well-pleaded factual allegations' to be true" and determines whether the allegations "plausibly give rise to an entitlement to relief." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662,

679 (2009)). For the reasons set forth below, the complaint fails to state a claim against any of the defendants and therefore must be dismissed.

**1. Attorney Defendants**

Diederich brings claims against the Attorney Defendants for tortious interference with contract (Count Five), violation of New York Judiciary Law § 487 (Counts Six and Seven), and conspiracy to violate his civil rights (Counts Eight and Nine). At bottom, all of Diederich's claims are based on the allegation that the Attorney Defendants attempted to prevent him from recovering a fee for his representation of Rasmy in the Employment Discrimination Action by (a) structuring the settlement agreement to enable Rasmy to avoid paying Diederich, and (b) attempting to prevent this Court, on remand, from considering the substance of that settlement agreement when adjudicating Diederich's renewed motion for a charging lien. For the reasons set forth below, none of these allegations are plausibly pleaded. The complaint therefore must be dismissed in full as against the Attorney Defendants.

**a. Tortious Interference with Contract**

Under New York law, to make out a claim for tortious interference with contract, the plaintiff must allege "(1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and

(5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1375 (N.Y. 1996)).

Even assuming any of the other elements are sufficiently alleged in the complaint, the complaint fails to make out a remotely plausibly claim that the Attorney Defendants intentionally procured Rasmy's breach of his retainer agreement with Diederich. To the contrary, the settlement agreement (which Diederich attached to his complaint)[3] expressly accounted for Rasmy's satisfaction of Diederich's charging lien. It provided that Rasmy "shall place a portion of the Settlement Payment in escrow . . . sufficient to cover the entire lien amount claimed by Michael Diederich" and that the "amount shall remain in escrow until Michael Diederich['s] . . . lien dispute is fully and finally adjudicated." Ex. 4 (Settlement Agreement) ¶ 2, ECF No. 10, No. 26-cv-2132.[4] This contractual provision, which Diederich himself agreed to, flatly contradicts his assertion that the structuring of the settlement agreement somehow procured Rasmy's breach of the retainer agreement.

Moreover, the complaint's additional assertion that the Attorney Defendants "advis[ed], assist[ed], or encourage[ed] Rasmy to retain

[3] Regardless of whether or not Diederich should have initially filed the settlement agreement under seal, the very limited reference made to its terms in this opinion does not affect any of the reasons any of the parties gave for its sealing.

[4] Rasmy deposited $100,000 into an interest-bearing account with the Clerk of Court on January 3, 2025, the full amount of the charging lien that Diederich seeks. Those funds remain available to satisfy Diederich's claim.

funds designated for attorney's fees rather than pay amounts owed to Diederich" is entirely unsupported by any specific factual allegations in the complaint. It is also undercut both by the language of the settlement agreement just described and by the fact that Rasmy did indeed deposit $100,000 with the Clerk of Court for the specific purpose of satisfying Diederich's claimed charging lien.

Diederich also relies on more recent events as support for his tortious interference with contract claim. These allegations, all of which pertain to the parties' dispute over the sealing of the Rasmy settlement agreement, do not make out a claim for tortious interference with contract. The premise of Diederich's arguments on this score is that the Attorney Defendants, by arguing that Diederich should have filed the Rasmy settlement agreement under seal when he filed his renewed motion for a charging lien, were attempting to prevent the Court from considering the amount at issue in the settlement in its adjudication of Diederich's charging lien. This argument is based on the erroneous notion, of which the Court previously attempted to disabuse Diederich, that the Court cannot or will not consider documents filed under seal when deciding his motion. This is incorrect. As is its obligation, the Court can and does consider all filings, including sealed filings, when rendering its decisions.[5] Because the sealing of the settlement agreement could not feasibly have impeded the Court's adjudication of Diederich's motion in any way, Diederich's

[5] Contrary to Diederich's assertion, documents filed under seal also become part of the record on appeal. See Lien Mtn. at 2 n.1.

tortious interference with contract claim against the Attorney Defendants must fail.

**b. Section 487**

New York Judiciary Law § 487 makes liable to any injured party any "attorney 'who[ i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party.'" Bill Birds, Inc. v. Stein L. Firm, P.C., 149 N.E.3d 888, 890 (N.Y. 2020). Section 487 is not aimed at "negligent acts or conduct that constitutes . . . legal malpractice." Id. at 891. Nor does it reach "nonmeritorious legal arguments," "poor lawyering, negligent legal research or the giving of questionable legal advice." Id. at 892 & n.3. Section 487 requires a false statement made intentionally and with the aim of misleading the court or another party. Id. at 891. As with other claims that sound in fraud, violations of § 487 must be plead with particularity. Langton v. Sussman & Watkins, 238 A.D. 3d 726, 730 (N.Y. App. Div. 2d 2025).

The complaint pleads no facts that could state a claim for a violation of § 487. Once more, Diederich bases his claim on the parties' dispute over the sealing of the Rasmy settlement agreement. But Diederich fails to identify any false statement made by any of the Attorney Defendants. At best, he takes issue with the Attorney Defendants' argument that he should have filed the Rasmy settlement agreement under seal. But, § 487 does not impose liability for an attorney's legal arguments, and, in any event, as Diederich is well aware, the Court previously ruled in the Attorney Defendants' favor

and ordered Diederich to re-file the Rasmy settlement agreement under seal.[6] That Diederich disagrees, for whatever reasons, with the Attorney Defendants' positions is not itself evidence of misconduct, no less misconduct rising to the level of fraud.

Diederich's contention that the Attorney Defendants violated § 487 in the course of the original settlement negotiations fares no better. For one thing, the allegation that the Marriott Attorneys were "perpetrating a deceit upon their own client" by structuring the settlement agreement to allocate substantial funds for attorney's fees while knowing the funds would instead go "into Rasmy's pocket" is a conclusory allegation, pleaded only "on information and belief," and unsupported by any specifics regarding the alleged deceit.

Of equal significance, Diederich fails to plausibly allege that he was injured by the alleged deceit. See Rozen v. Russ & Russ, P.C., 76 A.D. 3d 965, 968 (N.Y. App. Div. 2d 2010) ("injury to the plaintiff resulting from the alleged deceit[]" is an "essential element" of a claim under § 487); Bohn v. 176 W. 87th St. Owners Corp., 106 A.D.3d 598, 600 (N.Y. App. Div. 1st 2013) (similar). Diederich claims injuries "in an amount not less than the value of his lien, together with related losses," Compl. ¶ 326, but, as explained above, the settlement agreement specifically provided for $100,000 of the settlement proceeds to be placed in escrow for the sole purpose of satisfying

[6] Diederich quibbles over whether he acceded to the settlement agreement's confidentiality provision and whether he had any obligation to file it under seal. But this argument is irrelevant to any of the matters here at issue.

Diederich's $100,000 lien. Accordingly, no injury to Diederich from the structuring of the settlement agreement can plausibly be inferred from the allegations in the complaint.

Finally, although dismissal of the § 487 claim against the Moss Attorneys based on the original settlement negotiations would be required for the reasons just described, the claim also must be dismissed for the more fundamental reason that the complaint fails to plead any involvement by the Moss Attorneys in the negotiation, drafting, or execution of the settlement agreement or any participation in any related deceit.

**c. Civil Rights Conspiracy**

Finally, Diederich alleges against all defendants a civil rights conspiracy in violation of 42 U.S.C. §§ 1985 and 1986. In sum, Diederich argues that Rasmy and the Attorney Defendants conspired to prevent him from enforcing his charging lien and that this conspiracy was motivated by the defendants' discriminatory animus towards Diederich based on his representation of Rasmy, a protected-class plaintiff, and/or Rasmy's hostility towards Diederich for failure to sufficiently advocate his religious and national origin discrimination claims in the Employment Discrimination Action. There is no support for these claims in the complaint.

For one thing, the complaint is entirely devoid of any non-conclusory allegations demonstrating a "meeting of the minds," an essential element of any conspiracy claim. See Nat'l Cong. for Puerto Rican Rights v. City of New York. City of New York, 75 F. Supp. 2d

154, 168 (S.D.N.Y. 1999) (quoting Sales v. Murray, 862 F. Supp. 1511, 1517 (W.D. Va. 1994)). But, even setting this and other issues aside, the core contention on which Diederich's §§ 1985 and 1986 claims are based is Diederich's misapprehension, discussed above, that the Attorney Defendants' attempts to prevent public disclosure of the terms of the Rasmy settlement agreement were somehow designed to obstruct this Court's adjudication of Diederich's charging lien. Sealing the settlement agreement has no impact on the Court's adjudication of the merits of Diederich's motion, nor on the Court's consideration of the terms of that agreement. Because this underlying allegation is not plausibly plead, the civil rights conspiracy claims must fail. Accordingly, Diederich's §§ 1985 and 1986 claims must be dismissed.

**2. Rasmy**

In addition to the claims against the Attorney Defendants, Diederich also brings various claims against Rasmy, seeking to recover for the value of the legal services he provided in the Employment Discrimination Action. Diederich brings claims for breach of contract (Count One), quantum meruit (Count Two), account stated (Count Three), and constructive trust and equitable accounting (Count Four). For several reasons, these claims must be dismissed.[7]

---

[7] To the extent that Counts Eight and Nine, the civil rights conspiracy claims, are also brought against Rasmy, they are dismissed for the reasons stated above. See supra II.B.1.c.

First, as Diederich appears to recognize, an attorney discharged without cause can recover from his former client only in quantum meruit, using any of three remedies: the retaining lien, the charging lien, and the plenary action in quantum meruit. Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York, 754 N.Y.S.2d 220, 223 (App. Div. 1st 2002).[8] The measure of recovery under each of these remedies is the same: the "fair and reasonable value of the services rendered." Universal Acupuncture, 370 F.3d at 263. These remedies, moreover, are the exclusive remedies available to a discharged attorney, regardless of whether the attorney was retained pursuant to any sort of agreement.[9] See Liddle & Robinson, LLP v. Garrett, 720 F. Supp. 2d 417, 423 (S.D.N.Y. 2010) (dismissing discharged attorney's breach of contract and account stated claims because such claims are beyond the "only three remedies available" to a discharged attorney). Similarly, while a court can consider the terms of an attorney's contract in determining the fair and reasonable value of the attorney's services, those terms are in no way determinative of the attorney's

---

[8] An attorney discharged with cause is not entitled to any compensation at all. Garcia v. Teitler, 443 F.3d 202, 211-12 (2d Cir. 2006).

[9] A discharged attorney is entitled to recover a contingent portion of the former client's ultimate recovery only if the attorney and client so agree at the time of the discharge (or thereafter). See Universal Acupuncture, 370 F.3d at 263;Lai Ling Cheng v. Modansky Leasing Co., Inc., 73 N.Y.2d 454, 458 (1989). "[S]uch an arrangement of payment cannot be compelled by the attorney; it can only be reached with the consent of the client." Nabi v. Sells, 892 N.Y.S.2d 41, 44 (App. Div. 1st 2009). The complaint contains no allegation that Diederich and Rasmy entered into a new agreement after Diederich was discharged setting Diederich's recovery on a contingent basis. This alternative means of recovery, therefore, is irrelevant to the present dispute.

recovery. Rasmy, 2025 WL 3552719, at *4; see also Universal Acupuncture, 370 F.3d at 263 ("Recovery on a quantum meruit basis is called for even where the attorney discharged without fault was employed under a contingent fee contract."); Lai Ling Cheng v. Modansky Leasing Co., Inc., 73 N.Y.2d 454, 457-58 (1989) ("When a client discharges an attorney without cause, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provide in the contract or retainer agreement.").

This limitation on a discharged attorney's means of recovery follows from the nature of the attorney-client relationship. "Because a client 'has the implied right to terminate the attorney-client relationship at any time, with or without cause, . . . premature termination is not an actionable breach [of contract]." Liddle, 720 F. Supp. 2d at 425 (quoting Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc., 20 F. Supp. 2d 645, 649 (S.D.N.Y.1998)); see also Universal Acupuncture, 370 F.3d at 263 ("Under New York law, a client may discharge his or her lawyer at any time, with or without cause."); Levy v. Laing, 43 A.D.3d 713, 715 (N.Y. App. Div. 1st 2007) (a client's discharge of his attorney "annul[s]" any contingency fee agreement between them). Nor, for the same reason, can a discharged attorney bring a claim against a former client for account stated. See Liddle, 720 F. Supp. 2d at 426-27. Attorneys discharged without cause are instead "limited to seeking relief under a theory of quantum meruit." Id. at 427; see also Demov, Morris, Levin & Shein v. Glantz, 53 N.Y.2d

553, 556-57 (1981) ("[S]ince the client has the absolute right on public policy grounds to terminate the attorney-client relationship at any time without cause, it follows . . . that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered."). Diederich's claims for breach of contract and account stated therefore must be dismissed.

As for Diederich's claim for constructive trust and equitable accounting, although the Court is unaware of any other cases involving a similar claim by an attorney against his former client's settlement proceeds, the principles just identified demand the dismissal of this claim as well. Constructive trust and equitable accounting are equitable remedies designed to prevent the defendant's unjust enrichment. See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc., 380 F.3d 624, 646 (2d Cir. 2004); Gary Friedrich Enters., LLC v. Marvel Enters., Inc., 713 F. Supp. 2d 215, 233 (S.D.N.Y. 2010); In re Leasing Consultants, 592 F.2d 103, 107 (2d Cir. 1979). In the attorney-client context, however, recovery in quantum meruit is the proper means for preventing the unjust enrichment of the client. See Demov, 53 N.Y.2d at 558; Nabi v. Sells, 70 A.D.3d 252, 253-54 (N.Y. App. Div. 1st 2009). Indeed, as the New York Court of Appeals and Second Circuit have observed, "[p]ermitting an attorney improperly discharged to recover the reasonable value of [the] services rendered . . . strikes [a] delicate balance between the need to deter

clients from taking undue advantage of attorneys" and the client's right to terminate the attorney-client relationship at any time. Universal Acupuncture, 370 F.3d at 265 (quoting Demov, 53 N.Y.2d at 558). Accordingly, to the extent that Diederich's claim for constructive trust and equitable accounting seeks recovery on some basis other than quantum meruit, the claim must be dismissed.

Finally, Diederich's quantum meruit claim also must be dismissed because he is entitled to no greater recovery than the Court has already awarded. As noted above, the measure of recovery for an attorney discharged without cause is the "fair and reasonable value of the legal services rendered," i.e. recovery in quantum meruit. See Rasmy, 2025 WL 3552719, at *4 (quoting Smith, 596 N.Y.S.2d at 576). The Court has already calculated and awarded Diederich this amount via charging lien. See supra II.A. Given that the charging lien represents the Court's assessment of the "fair and reasonable value" of Diederich's services, Diederich is not entitled to any additional recovery.[10] Accordingly, Diederich's plenary quantum meruit claim,

---

[10] Diederich is correct that the charging lien, retaining lien, and plenary action in quantum meruit are "cumulative" and not "exclusive" remedies. Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York, 754 N.Y.S.2d 220, 223 (App. Div. 1st 2002). For example, an attorney whose former client receives a small judgment or none at all may seek to proceed both with a charging lien and a plenary action because the charging lien is enforceable only against the judgment, whereas the plenary action is enforceable "against all of the client's assets." Butler, Fitzgerald & Potter v. Gelmin, 651 N.Y.S.2d 525, 527 (N.Y. App. Div. 1st 1997) (emphasis omitted). Even so, the attorney's total recovery is not cumulative, but is instead limited to the "reasonable value of [the] services rendered." Nabi, 892 N.Y.S.2d at 43. Here, Diederich's recovery is fully satisfied by the charging lien.

which "arise[s] from the same facts" and "do[es] not allege distinct damages," is duplicative of the charging lien claim already adjudicated and must be dismissed. NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (quoting Sitar v. Sitar, 50 A.D.3d 667, 680 (N.Y. App. Div. 2d 2008)).[11]

**III. Conclusion**

For the reasons set forth above, the Court awards Diederich a charging lien in the amount of $70,000 in Case No. 16-cv-4865; reconfirms its bottom-line order granting the Attorney Defendants' motion to dismiss the complaint in Case No. 26-cv-2132; and likewise grants Rasmy's motion to dismiss the complaint in Case No. 26-cv-2132.

The Clerk of Court is respectfully directed to close the motions at ECF Nos. 18, 24, and 39 in Case No. 26-cv-2132, and at ECF No. 340 in Case No. 16-cv-4865; to enter final judgment in favor of defendants in Case No. 26-cv-2132 and to close the case; and to release the funds deposited with the Clerk of Court in case No. 16-cv-4865 to the extent necessary to comply with this order, see ECF No. 336, 16-cv-4865, i.e. by paying $70,000 to Diederich and returning $30,000 to Rasmy.

---

[11] To the extent Diederich suggests that his potential recovery in the Fee Action is greater than the recovery awarded via charging lien, he is mistaken. The measure of recovery for an attorney discharged without cause is "the fair and reasonable value of the services rendered . . . computed on the basis of quantum meruit." Cohen, 602 N.Y.S.2d at 790. This is true regardless of the avenue by which the attorney seeks to recover. In any event, Diederich expressly disclaims any entitlement to an award greater than the award sought via charging lien. Instead, he proposes that any additional award should be used to satisfy the claims of Rasmy's other attorneys. If, however, such claims exist, it is those attorneys, and not Diederich, who must enforce them.

SO ORDERED

New York, New York
~~July~~ 8/3/ 2026

JED S. RAKOFF, U.S.D.J.