UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEBRIAL RASMY,<br><br>Plaintiff,<br><br>-v-<br><br>MARRIOTT INTERNATIONAL, INC., et al.<br><br>Defendants. | 16-cv-4865 (JSR) |
| MICHAEL DIEDERICH, JR.,<br><br>Plaintiff,<br><br>-v-<br><br>FORD HARRISON LLP, et al.,<br><br>Defendants. | 26-cv-2132 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

The Court is in receipt of plaintiff Michael Diederich Jr.'s motion for reconsideration of this Court's dismissal of the complaint in Diederich, Jr. v. Ford Harrinson, LLP, et al., No. 26-cv-2132, for failure to state a claim in the August 3, 2026 Opinion and Order. See ECF No. 58. On August 21, 2026, this Court denied Diederich's separate motion for reconsideration of the August 3 Order's resolution of Diederich's motion for a charging lien in No. 16-cv-4865. See No. 16-cv-4865, ECF No. 362.

At bottom, Diederich's motion for reconsideration seeks leave to file an amended complaint, attached to the motion as a Proposed Amended Complaint ("PAC"). Mtn. at 1, ECF No. 58. The motion for reconsideration argues that reconsideration is required because (1)

the August 3 Order committed a legal error by finding that Diederich's breach of contract claim against Gebrial Rasmy is categorically barred by Diederich's termination and the lien adjudication in No. 16-cv-4865 and (2) it is an injustice to deny Diederich an opportunity to file a first amended complaint that states plausible claims for relief. Reply at 2, ECF No. 62. The motion is denied.

## I. Background

The relevant factual background is described in detail in this Court's August 3 Opinion and Order. See Aug. 3 Order at 3-7, ECF No. 51. In brief, in 2016 Rasmy sued his former employer Marriott International, Inc. and several Marriot employees for employment discrimination (the "employment discrimination action"). After considerable delay occasioned by Rasmy's frequent changing of attorneys, the case went to trial in March 2023, with the jury returning a modest verdict for $400,000 in Rasmy's favor against one of the defendants, an employee of Marriott. However, the entire case was ultimately resolved in a settlement agreement in 2024.

Marriott and its employees were represented at all times by Ford Harrison LLP, including Mark Saloman. Post-settlement, they were also represented by Moss & Byrnes, PLLC and Andrea Moss. One of the attorneys Rasmy retained and terminated prior to trial was Diederich. For that representation Diederich and Rasmy signed a retainer agreement that provided terms for Diederich's compensation (the "Retainer Agreement").

Following Diederich's termination as counsel without cause, Rasmy, as mentioned, went to trial, obtained a jury verdict for $400,000, and then settled with the defendants for a publicly undisclosed amount. The settlement agreement included a term requiring Rasmy to place $100,000 in escrow to satisfy a charging lien Diederich filed in the employment discrimination action under New York Judiciary Law § 475. Diederich agreed to this term. On October 31, 2024, this Court granted Diederich a charging lien in the amount of $100,000. On December 11, 2025, the Second Circuit reversed, instructing this Court to apply certain factors to determine the amount of compensation Diederich was owed. Following remand, Diederich filed another motion for a charging lien on January 27, 2026.

Separately, Diederich also filed a new lawsuit in state court (the "fee action") against Mr. Saloman, Ms. Moss and the law firms Ford Harrison and Moss & Byrnes (the "attorney defendants"), as well as Rasmy. On March 16, 2026, defendants removed the fee action to federal court, see ECF No. 17, the case was consolidated with the employment discrimination action for limited purposes, see ECF No. 35, and defendants moved to dismiss, see ECF Nos. 20, 24. In an Opinion and Order dated August 3, 2026, this Court granted Diederich's motion for a charging lien in the employment discrimination action and awarded Diederich $70,000 in fees. See ECF No. 51. In the same Order, this Court granted defendants' motion to dismiss the fee action. Id. On August 28, 2026, Diederich filed the

instant motion for reconsideration of this Court's dismissal of the fee action, which principally seeks leave to file an amended complaint.

## II. Discussion

"A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). "[T]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." Nat'l Petrochemical Co. v. The M/T Stolt Sheaf, 930 F.2d 240, 245 (2d Cir. 1991) (citation modified). The motion for reconsideration under Rule 59(e) and leave to amend are thus addressed in turn.

### A. Motion for Reconsideration

"Rule 59(e) provides that a 'motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.'" Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020) (quoting Fed. R. Civ. P. 59(e)). "A motion for reconsideration should be granted only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956

F.2d 1245, 1255 (2d Cir. 1992)); see also Metzler Inv. GmbH, 970 F.3d at 142 (same). However, when considering a motion for reconsideration that seeks leave to file an amended complaint, "it is appropriate . . . to take in account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." Nat'l Petrochemical Co. v. The M/T Stolt Sheaf, 930 F.2d 240, 245 (2d Cir. 1991) (citation modified).

Diederich first argues that this Court's finding that Diederich's breach of contract claim for "contingency/accrued-payment obligations" was "necessarily barred by discharge and the lien adjudication" in No. 16-cv-4865 was legally erroneous. Reply at 2, ECF No. 63.

There is no legal error in this Court's August 3 Order. This Court's statement that "an attorney discharged without cause can recover [legal fees] from his former client only in quantum meruit, using any of three remedies: the retaining lien, the charging lien, and the plenary action in quantum meruit," Aug. 3 Order at 20, ECF No. 51 (citation omitted), is an accurate statement of New York law, as explained in more detail below in Section B.1.a. Because a breach of contract claim is not one of Diederich's available remedies to recover legal fees, his breach of contract claim failed to state a claim. Diederich identifies no legal error in this Court's understanding of New York law, or in this Court's description of his breach of contract claim as one that seeks to recover legal fees allegedly owed pursuant to the Retainer Agreement.

Next, Diederich argues that denying him an opportunity to file an amended complaint would be unjust because he has not previously filed an amended complaint and the PAC states plausible legal claims. That argument is wrong because for the reasons described in Section B, it would be futile to grant Diederich leave to amend.

**B. Leave to Amend**

"It is well established that leave to amend need not be granted . . . where the proposed amendment would be futile." Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) (citation modified). "It is within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994). "When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." State Trading Corp. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990); see also Janese v. Fay, 692 F.3d 221, 229 (2d Cir. 2012) ("[A]mendment of a complaint becomes significantly more difficult when a plaintiff waits . . . until after judgment has been entered.").

"Proposed amendments are futile if they would fail to . . . state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scot. Grp., 783 F.3d 383, 389 (2d Cir. 2015)

(citation modified). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face.'" Buon v. Spindler, 65 F.4th 64, 76 (2d Cir. 2023) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," Twombly, 550 U.S. at 555, or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In this case, it would be futile to grant leave to amend because the PAC fails to state any claim.

**1. The PAC fails to state a claim for breach of contract or quantum meruit against Rasmy.**

The PAC brings a breach of contract claim and in the alternative a quantum meruit claim against Rasmy. Both claims fail to state a claim as a matter of law.

*a) Breach of Contract*

Diederich explains that "the proposed [breach of] contract count . . . alleges that . . . obligations for completed work matured upon Rasmy's recovery; his later refusal to pay is the alleged breach," Mtn. at 2, ECF No. 58, because "the Retainer Agreement plausibly created separable obligations for work already completed," Mtn. at 6, ECF No. 58. See PAC ¶¶69-71 ("Rasmy . . . failed and refused to pay the approximately $122,185 accrued [legal]

fee" owed to Diederich under a Retainer Agreement).[1] The PAC fails to state a claim.

At bottom, the PAC's breach of contract claim seeks legal fees Diederich alleges he is owed under the Retainer Agreement. New York law bars such a claim. The New York Court of Appeals long ago explained that when a client terminates their lawyer, the retainer agreement's "terms no longer serve to establish the sole standard for the attorney's compensation," but that "[t]ogether with other elements they may . . . be taken into consideration as a guide for ascertaining *quantum meruit*." Tillman v. Komar, 181 N.E. 75, 75-76 (N.Y. 1932).

More recently, the Court of Appeals explained the justification for the quantum meruit rule and the fact that it is the sole remedy to recover legal fees as follows:

> Because of the uniqueness of the attorney-client relationship, traditional contract principles are not always applied to govern disputes between attorneys and clients. Thus it is well established that notwithstanding the terms of the agreement between them, a client has an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging

[1] It's unclear how different the PAC's breach of contract claim is from the original breach of contract claim. In opposing the prior motion to dismiss, Diederich argued that "Rasmy's breach . . . is his refusal to pay amounts due under the retainer and lien rights . . . Continuing refusal to pay is a continuing breach." ECF No. 27 at 8.

> the attorney. Where that discharge is without case, the attorney is limited to recovering in quantum meruit the reasonable value of the services rendered.

Campagnola v. Mulholland, Minion & Roe, 555 N.E. 2d 611, 614 (N.Y. 1990).

The reasonable value of the services rendered is the only compensation "the attorney is entitled to recover . . . whether that be more or less than the amount provided in the contract or retainer agreement." Lai Ling Cheng v. Modansky Leasing Co., 539 N.E. 2d 570, 572 (N.Y. 1989). And "[r]ecovery on a *quantum meruit* basis is called for . . . [even] where the attorney discharged without fault was employed under a contingent fee contract." Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004) (citation modified). However, the discharged attorney and client "in the alternate [] may agree that the [discharged] attorney . . . will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the case." Lai Ling Cheng, 539 N.E. 2d at 572.

Thus, when an attorney is discharged without cause the attorney (1) has a right to recover quantum meruit, "the value of the services rendered," Campagnola, 555 N.E. 2d at 614, but (2) may agree with the former client to receive a contingent percentage fee instead, Lai Ling Cheng, 539 N.E. 2d at 572. See also Levy v. Laing, 43 A.D. 3d 713, 715 (N.Y. App. Div. 2007) ("[A]s against a former client, the discharged attorney is entitled to quantum meruit only,

unless the client and attorney agree otherwise."); Universal Acupuncture Pain Servs., P.C., 370 F.3d at 263 ("If the lawyer is discharged without cause and prior to the conclusion of the case, however, he or she may recover either (1) in quantum meruit, the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, but only if both of the parties have so agreed.").

There is no question that Diederich and Rasmy did not agree to any form of compensation for Diederich upon Diederich's termination. Therefore, as a matter of law, Diederich may only recover quantum meruit and his breach of contract claim seeking "approximately $122,185 less credits and lien recovery," PAC ¶74, ECF No. 58, based on an alleged breach of the Retainer Agreement fails to state a claim.

The cases Diederich cites are not to the contrary. In White & Case LLP v. Shipman Associates, LLC the attorneys and the client agreed on what the attorneys' compensation would be upon discharge. 214 A.D. 3d 469, 469-70 (N.Y. App. Div. 2023). Diederich does not allege that there was any such agreement in this case. De Castro v. Turnbull found only that there was sufficient evidence for the jury to conclude that the discharged attorney was entitled to his contingency fee as agreed upon in the retainer agreement under Campagnola's quantum meruit rule. 66 A.D. 3d 417, 417 (N.Y. App. Div. 2009) (citing Campagnola, 555 N.E. 2d 611 (N.Y. 1990)).

*b) Quantum Meruit*

Diederich's alternative plenary quantum meruit claim also fails to state a claim, but for a different reason. An attorney terminated without cause has three possible remedies "to recover the value of his or her legal services: the retaining lien, the charging lien, and the plenary action in quantum meruit." Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York ("Schneider"), 302 A.D. 2d 183, 186 (N.Y. App. Div. 2002). Although "[t]hese remedies are not exclusive, but cumulative," the fees that may be recovered are the same, namely, quantum meruit for the reasonable "value of his or her legal services." Id.

Diederich's plenary quantum meruit is duplicative of the motion for a charging lien. "Under New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc., 810 F.3d 861, 869 (2d Cir. 2015) (affirming dismissal of a NY state law claim because it was duplicative of another claim) (quoting Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 70 A.D. 3d 423, 426 (NY. App. Div. 2010)). The motion for a charging lien and plenary quantum meruit action arise from the same facts and seek identical damages. See Aug. 3 Order at 23-24, ECF No. 51. This Court determined the quantum meruit for the reasonable value of Diederich's legal services when it granted Diederich's motion for a charging lien.

### 2. The PAC fails to state claims for tortious interference against the attorney defendants

Diederich's PAC also brings two claims for tortious interference, one for interference with contract and an alternative claim for interference with prospective economic relations. Both fail to state a claim.

#### *a) Tortious interference with contract*

The PAC fails to state a claim for tortious interference with contract. "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 668 N.E. 2d 1370, 1375 (N.Y. 1996)).

With respect to Saloman and Ford Harrison, Diederich argues that "[t]he attorney defendants . . . procured or perpetuated Rasmy's later nonpayment through lien-reduction pressure, settlement structure, secrecy demands, and efforts to release the disputed res [sic]." Mtn. at 7, ECF No. 58. As to Moss and Moss & Byrnes, their alleged interference was "secrecy demands, sanctions and ethics pressure, and the effort to obtain the disputed $30,000." Mtn. at 8, ECF No. 58. None of these allegations states a plausible claim.

First, as explained above, Diederich does not state a claim for breach of contract against Rasmy. Therefore, the PAC does not allege a plausible "actual breach of contract" and the intentional interference with contract claims against the attorney defendants, premised on Rasmy's breach of contract, necessarily fails. See Kirch, 449 F.3d at 401 (actual breach of contract is an element of intentional interference with contract).

Second, this Court's August 3 Order explained that Diederich's allegations that Saloman or Ford Harrison intentionally procured Rasmy's breach of his obligations to Diederich are conclusory and speculative. Aug. 3 Order at 14, ECF No. 51. In fact, the settlement agreement provided for "Rasmy's satisfaction of Diederich's charging lien" and this "contractual provision, which Diederich himself agreed to, flatly contradicts his assertion that the structuring of the settlement agreement somehow procured Rasmy's breach of the retainer agreement." Id. The PAC does nothing to address this deficiency, and for that independent reason continues to fail to state a claim for intentional interference with contract.

Third, the alleged interference from "secrecy demands, sanctions and ethics pressure, and the effort to obtain the disputed $30,000" do not plausibly state a claim because they were not "intentional procurement of the third-party's breach of the contract without justification." Kirch, 449 F.3d at 401.

As the Court has repeatedly explained, this Court is permitted to see sealed documents, so the fact that certain information is

sealed on the public docket in no way plausibly caused any kind of interference with Diederich's contractual rights.

The allegation of sanctions and ethics pressure is conclusory and there are no allegations as to how that alleged pressure interfered with Diederich's contractual rights.

Finally, Rasmy's counsel's efforts to enforce this Court's direction in its August 3 Order that the Clerk of Court return $30,000 to Rasmy, see Aug. 3 Order at 24, ECF No. 51, is not plausibly interference through intentional procurement of breach.[2] It is simply legal advocacy and an effort to enforce a court order favorable to their client.

*b) Tortious interference with prospective economic relations*

Similarly, the PAC fails to state a claim for tortious interference with prospective economic relations. "Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or

[2] On August 21 this Court ordered the $30,000 to remain with the Clerk of Court. See Rasmy v. Marriott International, Inc., et al., No. 16-cv-4865, ECF No. 362 at 4 (S.D.N.Y. Aug. 21, 2026) ("[T]he Clerk of Court is directed to preserve the entire $100,000 and all earnings until either the time to appeal expires or any such appeal is resolved by the Second Circuit."). There is no allegation that the attorney defendant's sought the return of the $30,000 even after this Court's August 21 Order.

improper means; and (4) the defendant's interference caused injury to the relationship." Kirch, 449 F.3d at 400 (citation omitted).

The New York Court of Appeals has explained that to state a claim for interference with prospective economic interests, "the defendant's conduct must amount to a crime or an independent tort." Carvel Corp. v. Noonan, 818 N.E. 2d 1100, 1103 (N.Y. 2004). The only exception is where the defendant acted "for the sole purpose of inflicting intentional harm on plaintiffs." Id. (citation omitted).

Moreover, attorneys are privileged to advise their clients about, and to assist their clients in, contractual disputes and are shielded from tortious-interference liability so long as they act within the scope of their representation. See Kartiganer Assocs., P.C. v. Town of New Windsor, 108 A.D.2d 898, 899 (N.Y. App. Div. 1985) (attorney not liable for inducing client to breach a contract where the attorney acts on the client's behalf and within their scope of authority). The Appellate Division has held that an attorney may nevertheless be liable if there was "fraud, collusion, malice or bad faith." Beatie v. DeLong, 164 A.D.2d 104, 109-10 (N.Y. App. Div. 1990).[3]

The PAC does not allege that the attorney defendants acted for the sole purpose of intentionally harming Diederich or that the attorney defendants committed a crime. Instead, Diederich argues

---

[3] It is unclear whether these holdings of the Appellate Division remain good law following Carvel Corp. because it is possible a defendant acted maliciously or in bad faith, but not unlawfully, tortiously, or for the sole purpose of harming plaintiff.

that the attorney defendants' alleged violation of Judiciary Law § 487 provides the necessary independent tort. See Reply at 4-5, ECF No. 62. But as explained below, the PAC fails to state a claim for violation of Judiciary Law § 487 against any of the attorney defendants. So the PAC does not adequately allege that attorney defendants committed an independent tort.

Although the PAC arguably alleges that the attorney defendants acted with malice or in bad faith in seeking to protect the confidentiality of Rasmy's settlement agreement, those allegations are conclusory, need not be accepted as true, and thus fail to state a claim. See Ashcroft, 556 U.S. at 678 (conclusory allegations need not be accepted as true). As Rasmy's attorneys, Saloman and Ford Harrison were well within their rights to negotiate every term of the settlement agreement in the best interests of their client, including any cap on Diederich's fees.

Finally, no well-pleaded factual allegations suggest that Moss and Moss & Byrne committed an independent tort, solely intended to harm Diederich or acted unlawfully, with malice, or in bad faith, when they sought the return of $30,000 to Rasmy consistent with this Court's order directing the Clerk of Court to do the same, see Aug. 3. Order at 24, ECF No. 51. See Carvel Corp., 818 N.E. 2d at 1103 (requiring conduct that is unlawful, independently tortious, or solely intended to harm the plaintiff to state a claim for intentional interference with prospective economic relations); Beatie, 164 A.D. 2d at 109-10 (attorney may be liable for

intentional interference where they acted with malice or in bad faith); Ashcroft, 556 U.S. at 678 (conclusory allegations need not be accepted as true).

### 3. The PAC fails to state claims for violation of Judiciary Law § 487 against attorney defendants

The PAC fails to state claims for violations of Judiciary Law § 487 against the attorney defendants. "New York Judiciary Law § 487 makes liable to any injured party any 'attorney who is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party.' Section 487 is not aimed at 'negligent acts or conduct that constitutes . . . legal malpractice.' Nor does it reach 'nonmeritorious legal arguments,' 'poor lawyering, negligent legal research or the giving of questionable legal advice.' Section 487 requires a false statement made intentionally and with the aim of misleading the court or another party." Aug. 3 Order at 16, ECF No. 51 (quoting Bill Birds, Inc. v. Stein L. Firm, P.C., 149 N.E.3d 888, 890-892, & n.3 (N.Y. 2020)).

The PAC still fails to state Judiciary Law § 487 claims. That is clear when considering Diederich's alleged injury: "Diederich reduced his asserted fee claim under threat; incurred sealing, sanctions, and motion-practice burdens; and was forced to litigate the reasonableness of a $100,000 lien against a public record that showed a $400,000 verdict but concealed the [larger settlement] recovery and its [significant] statutory-fee component." Mtn. at 10,

ECF No. 58. Diederich cannot state a claim based on any of these three alleged injuries.

First, there is no injury from being "forced to litigate the reasonableness of a $100,000 lien against a public record" that withheld certain sealed information. As this Court has repeatedly explained, the Court can see and refer to documents filed under seal and considered everything that was sealed from the public docket throughout this litigation. Second, Diederich's "sealing, sanctions, and motion-practice burdens" are nothing more than the ordinary burdens of litigation. Section 487 is not aimed at ordinary litigation conduct, even if opposing counsel raises nonmeritorious arguments or provides their client with questionable legal advice. See Bill Birds, Inc., 149 N.E.3d at 892 & n.3.

Third, the PAC fails to state a claim based on Diederich's alleged injury of "reduc[ing] his asserted fee claim under threat." The PAC alleges that "Saloman stated in substance that Marriott had not paid the $250,000 excess as attorneys' fees, even though the signed agreement expressly allocated [a significant portion] to a statutory fee claim." PAC ¶ 52, ECF No. 58. But that statement was made two years after Diederich agreed to the fee cap in the settlement agreement, so it cannot possibly have caused the alleged injury. Id. (statement made on February 14, 2026). The PAC also continues to allege, as the original complaint did, that Ford Harrison did not "accurately explain[] to Marriott -- the firm's own client and a party to the litigation -- why Marriott was paying

$250,000 more than the verdict, waiving a substantial sanctions judgment, incorporating lien concessions, and demanding confidentiality." Mtn. at 9, ECF No. 58. But as explained in the August 3 Order, those allegations are conclusory and thus this Court need not accept them as true.

Fourth, even setting aside the absence of a cognizable alleged injury, the only allegations that any of the attorney defendants acted "with the intent to mislead the court or a party," Bill Birds, Inc., 149 N.E.3d at 891, are conclusory and thus need not be accepted as true, Ashcroft, 556 U.S. at 678.

Fifth, the PAC does not allege, as the Appellate Division has required, that the attorney defendants' conduct is part of a "chronic and extreme pattern of behavior on the part of the defendant attorneys." Coalition of Landlords, Homeowners, & Merchants, Inc. v. Glass, 242 A.D. 3d 1172, 1174 (N.Y. App. Div. 2025); see Mohammad v. Rehman, 236 A.D. 3d 892, 894 (N.Y. App. Div. 2025) (same).[4]

[4] The Court of Appeals has never adopted this requirement. It had the opportunity to do so in the 2020 case Bill Birds, Inc., where defendants argued plaintiffs failed to state a claim by relying on the Appellate Division's requirement that plaintiffs allege chronic, extreme pattern of legal delinquency. See Bill Birds, Inc., 149 N.E. 3d at 895 (Rivera, J. dissenting). The Court of Appeals instead resolved the case on the basis that "plaintiffs failed to allege that defendants engaged in deceit or collusion during the course of the underlying federal intellectual property lawsuit against GM and EMI." Id. at 892.

## III. Conclusion

For the reasons set forth above, the motion for reconsideration is hereby denied. The Clerk of Court is respectfully directed to close the motion at docket number 58 in case number 26-cv-2132.

SO ORDERED.

New York, New York
September 21, 2026

JED S. RAKOFF, U.S.D.J.